Pinney v. The First Division of the St. Paul and Pacific Railroad Co.

# W. W. Pinney

## vs.

## The First Division of the St. Paul and Pacific Railroad Co.

Where goods are transported by railroad, the final carrier transporting the goods to their destination, in the absence of special agreement or custom to the contrary, is not required to notify the consignee of the arrival of the goods at their destination, if he resides at the distance of eighteen miles from the place of delivery. But if such consignee has an agent residing at the place of delivery, known to the carrier, such agent is entitled to notice of the arrival of the goods, and has a reasonable time thereafter to remove them.

Whether the question of reasonable time is one of law for the court, or fact for the jury, must depend upon the circumstances of each particular case. If, from the facts found or undisputed in a particular case, the court can draw the conclusion as to whether the time is reasonable or not, by the application of any legal rules or principles, the question is one of law. But if the circumstances be numerous and complicated, and such as to exclude the application of any general principle, or definite rule of law, it is necessarily one of mere fact to be determined by the jury.

The general rule as to what is reasonable time in cases like the present, is not to be measured by any peculiar circumstances in the condition or situation of the consignee or plaintiff, which might render it necessary for his convenience or accommodation that he should have a longer time or better opportunity than if he resided at the place of consignment, and was prepared with the means and facilities of removing the goods. But what is meant by reasonable time is such as would give a person residing at the place, to which the goods are consigned, and informed of the usual course of business on the part of the company, a suitable opportunity, within usual business hours after the goods are ready for de-

livery, to come to the place of delivery, inspect the goods and take them away.

When upon the trial of a cause, an erroneous charge is given to the jury, which may have operated injuriously to one of the parties, upon an appeal to this court by the party aggrieved by such charge, a new trial will be granted.

This action was brought in the court of common pleas of Ramsey county, to recover the value of certain stoves, plows and other goods, the property of the plaintiff, which were burned in the warehouse of the defendant at Willmar. The action was tried by a jury, and a verdict rendered for the plaintiff. This appeal is taken by the defendant from an order denying a motion for a new trial. The facts of the case, and the exceptions taken at the trial are sufficiently stated in the opinion.

H. R. BIGELOW, for Appellant.

J. M. GILMAN, for Respondent.

*By the Court.*—McMILLAN, J.—We have have had occasion at the present term to consider quite fully the rights and obligations of common carriers of goods by railroad, under a general bailment for transportation; and upon a full examination and consideration of the subject, and of the authorities upon the questions involved, we have determined that, in the absence of special agreement or custom entering into the contract, the final carrier upon the route of transportation by railroad is governed by the following rules as to the delivery of the goods at the place of their destination, to-wit:

If the consignee is present upon the arrival of the goods, he must take them without unreasonable delay.

If he is not present, but lives at the place of delivery, the carrier must notify him of the arrival of the goods, and then

he has a reasonable time to take and remove them. *Derosia vs. Winona & St. P. R. R. Co.*, 18 *Minn.* 133.

If the consignee does not reside at the place of delivery, but has an agent there to receive the goods, of which the carrier has notice, such agent is entitled to notice of the arrival of the goods, and has a like time to remove them.

Whether the question of reasonable time is one of fact for the jury or law for the court, must depend upon the circumstances of each particular case. If, from the facts found, or undisputed, in a particular case, the court can draw the conclusion as to whether the time is reasonable or not, by the application of any legal rules or principles, the question is one of law. But if the circumstances be numerous and complicated, and such as to exclude the application of any general princple or definite rule of law, it is necessarily one of mere fact, to be determined by the jury. *Cochran vs. Toher, et al.* 14 *Minn.* 385; *Derosia vs. Winona & St. P. R. R. Co.*, 18 *Minn.* 133.

The general rule as to what is reasonable time in cases like the present one is, that the time is not to be measured by any peculiar circumstances in the condition or situation of the consignee or plaintiff, which might render it necessary for his convenience or accommodation that he should have a longer time, or better opportunity, than if he resided at the place of consignment, and was prepared with the means and facilities for removing the goods. But what is meant by reasonable time is such as would give a person residing at the place, to which the goods are consigned, and informed of the usual course of business on the part of the company, a suitable opportunity within business hours after the goods are ready for delivery, to come to the place of delivery, inspect the goods, and take them away. *Derosia vs. Winona & St. P. R. R. Co.*, supra.

It was admitted upon the trial of this case, by both parties " that the goods were received at St. Paul by the defendant, and shipped by the defendant and arrived at Willmar, and were there unloaded and deposited in the defendant's warehouse, as alleged in the answer in this action." The answer in the case alleges substantially that two separate lots of goods were received by defendant at St. Paul, consigned to the plaintiff at Willmar, and were safely transported to that place by defendant. One lot, specified in the answer, was shipped on the 5th of May, 1870, and arrived at defendant's depot at Willmar on the evening of the 6th of May, 1870, and the plaintiff not being there to receive the goods, the defendant, on the morning of the 7th of May, 1870, unloaded and deposited them safely and in good order in its warehouse at Willmar. The other lot, also specified in the answer, was shipped on the 10th of ·May, 1870, arrived at the same depot on the evening of the 11th, and plaintiff not being ·there to receive them, the defendant, on the morning of the 12th of said May, unloaded and deposited them safely and in good order in its said warehouse.

There is no dispute as to the facts that the goods remained in the warehouse until they were consumed *with* the warehouse by fire on the 14th of May, 1870, and that the loss of the goods was not chargeable to the negligence of the defendant.

During all these times, the plaintiff resided and did business in New London, which is about 18 miles from Willmar.

The plaintiff personally received no notice of the arrival of the goods at Willmar, previous to their destruction.

We are unable to discover any testimony in the case tending to show that the goods were shipped to " plaintiff at New London via Willmar."

The plaintiff says : " I never got any shipping bills for the

goods. I don't know how the goods were marked, neither the plows nor the stoves. I learned from Capt. Saunders in St. Paul that the stoves were marked ' W. W. Pinney, Willmar.' " The statement of the witness that they were *directed* to be shipped to him at New London via Willmar, does not tend to prove how they were shipped. We think there is no evidence tending to show an agreement on the part of the defendant to forward the goods to the plaintiff at New London.

The defendant's evidence tends to show that Burr & Price were the plaintiff's agents at Willmar for receiving the goods for plaintiff. The plaintiff's counsel claims that Burr & Price were carriers from Willmar to New London, but " were not agents of the plaintiff in any other sense than that of carriers, to whom the defendant was authorized to deliver the goods."

The plaintiff himself testifies, among other things, as follows : " There were other men hauling goods between the depot and New London; these men were ready to haul all the time    *    *    *    *. I had some one specially employed to haul my goods. In the spring of 1870 I gave a verbal order to the defendant's freight agent at Willmar, Mr. Robbins, to deliver my goods, when they should arrive, to Burr & Price. I told him they would pay the freight and receipt for the goods. Burr & Price lived at Willmar, and were engaged in teaming. The order was given some six weeks before the burning of the depot. That continued for some two or three weeks, and until I could get them hauled cheaper. They did not continue to haul all my goods after the verbal order spoken of ; others hauled some of them.

" *Question by plaintiff's counsel.*—State why it was that Burr & Price did not continue to haul for you ?

"Objected to by defendant's counsel as immaterial, and the objection being sustained the evidence was excluded.

" *Witness :* Other parties did haul for me. None hauled

any of the stoves, that came as part of the bill of goods in question, but did haul five crossing plows, six gauge wheels, and four extra shares. Burr & Price hauled the last named goods and they are all I received of the two bills of goods from Quincy and Moline," (the goods destroyed.) "These· they got on the day the depot burned. I gave them no new order to get these goods; they got them on the old order before spoken of and given six weeks before  *  *  *.

" *Question by the plaintiff's counsel.*—Were you ready and anxious to take the goods away if you had known of their arrival at Willmar ?

" Objected to by defendant's counsel as immaterial. The court overruled the objection, and allowed the evidence, to which defendant excepted.

" *Answer.*—Yes, sir. The plows were sold, and part of the stoves. I needed them very much."

Burr, of the firm of Burr & Price, was sworn and examined as a witness for plaintiff, and in answer to a question by plaintiff's counsel :  " Had you been notified by any parties in the depot that the goods were there ?" answered :  " No, sir," and being cross-examined, said :  " I had access to defendant's receipt book, and examined it daily. I knew that there were goods there for the plaintiff. Generally knew of the arrival of all goods—suppose I knew that those goods were there as quick as they were entered in the book. I recollect some plows that I receipted for ; one whole bill of plows."

We have referred to · and. extracted these portions of the testimony and proceedings upon the trial, for the single purpose of showing that it was one theory of the plaintiff's case before the jury, that Burr and Price were *carriers*, to whom defendant was obliged to deliver plaintiff's goods on their arrival, or to notify them of their arrival, and to take them away, because they were carriers, and not because they were

plaintiff's agents. And upon this theory, it is claimed, the case comes within the decision of this court in *Lawrence vs. Winona and St. Peter R. R. Co.*, 15 *Minn.* 390. This phase of the case must have been based upon the testimony of the plaintiff, Pinney, to the effect that Burr & Price were employed by him to haul his goods six weeks before the fire, and that such employment continued only for three weeks thereafter. The question put to the plaintiff, while upon the stand, by his counsel, and rejected by the court, gives great significance to the testimony upon this point.

It was also a theory of the plaintiff's case before the jury, that, even if Burr & Price were the agents of plaintiff to receive the goods, no notice had been given to them by defendant.

As to the last theory, there is evidence tending to show that no notice was directly given by defendant to Burr & Price. There is also evidence tending to show that Burr & Price had obtained knowledge of the fact that plaintiff's goods were in the depot through the receipt book of defendant, to which they had access daily. As to the weight of evidence upon the last point, that of notice to Burr & Price, we express no opinion whatever; but upon the point of the agency of Burr & Price, while the plaintiff's testimony tends slightly to support the position that the *agency* of Burr & Price had been terminated about three weeks before the fire, yet in view of all the testimony in the case, it is not sufficient to support the conclusion that such was the case, and that the defendant had notice thereof. There is no evidence tending to show that Burr & Price were *common carriers* of goods from Willmar to New London; and if they were not plaintiff's agents to receive the goods, the plaintiff had no agent at Willmar. Under the rules laid down by this court in *Derosia vs. Winona & St. P. R. R.*, *supra*, the defendant being the final carrier on the route of

transportation, and the plaintiff residing at New London, 18 miles distant from Willmar, the former was not required to give, nor the latter entitled to receive notice of the arrival of the goods. But if Burr & Price at Willmar were agents of plaintiff to receive the goods, and defendant knew they were such agents, the defendant was required to give them such notice, and they were entitled to a reasonable time after such notice to remove the goods; otherwise the defendant was *not* required to give the notice

The court charged that, in cases where the means of carriage are such as to render it impossible for the carrier to transmit the package to the various houses of the consignees; " the law holds that in such cases the carrier fulfills his duty by carrying the article to the place directed, placing it in a safe and secure place, and notifying the consignee of its arrival. Such was the duty of the defendant in reference to the goods in question. Upon the arrival of the goods in Willmar, the plaintiff should have been notified of such arrival, and it would then have been the duty of the plaintiff to remove them within a reasonable time;" to which defendant excepted.

It is evident from the whole charge that the court intended to instruct the jury, by this language, that it was the duty of the defendant to notify the plaintiff of the arrival of the goods, although he resided in New London, and had no agent in Willmar. This, as we have seen, was erroneous. We cannot relieve ourselves from the impression that it operated injuriously to the defendant. It is true that the court further charged the jury : " there is evidence tending to show that plaintiff had an agent at Willmar, to whom the defendant had been notified to deliver such goods as came for the plaintiff. If you find such to have been the case, a notice given by the defendant to this agent would have been sufficient to relieve it from responsibility after a reasonable time had elapsed,

Pinney v. The First Division of the St. Paul and Pacific Railroad Co.

within which such agent could remove the goods." Yet the question of the agency of Burr & Price, and the question of their having received notice of the arrival of the goods were both submitted to the jury, and upon each there was testimony *pro* and *con.*; and although the testimony adverse to the existence of the agency was slight, yet it was such that we hesitate to say that the question should not have been submitted to the jury.

It may be, then, that the jury, although satisfied that Burr & Price knew of the arrival of the plaintiff's goods at the time of their arrival, or at a time sufficiently long before the fire to have removed them, yet found that they were not the agents of the plaintiff, and, under the charge of the court that in that case the defendant was required to notify the plaintiff, returned the verdict they did. Or the jury may have found that Burr & Price were the plaintiff's agents, but had no notice of the arrival of the goods. In view of the erroneous charge, and the doubt created in our minds by this state of facts as to its effect upon the jury, we think the interests of justice require that the case should be retried. The order denying a new trial is therefore reversed, and a new trial ordered.