JAMES BOHEN *vs.* CITY OF WASECA.

June 11, 1884.

**City—Liability to Person Injured by Awning overhanging Sidewalk.**
It is a charter duty of the city of Waseca to use reasonable diligence to keep its streets and its sidewalks (which are but parts of streets) in safe condition, and the city is liable to those injured by its neglect of such duty. This duty requires it to take reasonable precaution against dangers from overhead as well as underfoot. If an awning, in a condition dangerous and unsafe to passers beneath it, is permitted to overhang a public street, such street is not in a safe condition.

**Same—Failure to pass Ordinance against such Awnings.**—The city is not absolved from liability for negligently permitting a dangerous awn-

ing to overhang the street, by the fact that the council has failed to pass an appropriate ordinance for the removal and abatement of nuisances, obstructions, or encroachments upon the streets, or to prevent any person obstructing sidewalks, as it is authorized to do by section 2, subchapter 4, of its charter. The authority to pass such ordinances does not limit the power of the council to exercise a general "care, supervision, and control" of the streets of the city.

Appeal by defendant from an order of the district court for Waseca county, *Buckham,* J., presiding, overruling a general demurrer to the complaint.

The complaint alleges (among other things) the incorporation of defendant on February 23, 1881; that by its charter it has the care, supervision and control of its streets, and authority to remove all obstructions and encroachments therein; that on Second street, the principal business street of the city, the defendant constructed and suffered to be constructed sidewalks through the business portion of the city, which have been generally and for ten years in public use; that on and long prior to January 20, 1883, there had been attached to a certain described building on Second street, a wooden awning which overhung the sidewalk. That this awning was fastened to the building by the nailing of the awning frame and timbers to the building, and was further supported by four braces extending from the awning to the side of the building, which were nailed to the awning and the building, without being mortised, or otherwise permanently fastened. That this mode of construction was negligent and unsafe, and that long before January 20, 1883, the braces and supports had become rotten, etc., and that the defendant had long had full knowledge of the condition of the awning, and its liability to fall, but negligently suffered it to remain in its dangerous condition.

The complaint further alleges that on January 20, 1883, while the plaintiff was lawfully walking on the sidewalk beneath it, the awning, by reason of its defective condition, fell upon him and inflicted the injuries for which he seeks to recover.

*C. K. Davis,* for appellant.

The defendant is given by its charter "authority, *by ordinance,* * * to remove and abate every nuisance, obstruction or encroachment

upon the streets." This gives a discretionary power of a legislative character, and does not impose on the city the duty (imposed by charter on St. Paul and some other cities) of keeping its streets free from nuisances. The city could not remove this awning except by an ordinance, general or special, and the complaint does not allege that any ordinance on the subject was ever passed. The charter of Winona considered in *Fox* v. *City of Winona*, 23 Minn. 10, was like that of this defendant, but in that case the city had passed an ordinance.

The liability of a city for injuries from defects in streets is such only as the legislature imposes, (*Nichols* v. *City of Minneapolis*, 30 Minn. 545,) and it is not liable for the non-exercise of, or for the manner in which it in good faith exercises, discretionary powers of a public or legislative character. 2 Dillon, Mun. Corp. § 949.

The doctrine in respect to falling awnings "is limited and peculiar, if not exceptional." Id. § 1004. The awning in this case hung over the sidewalk, being attached to the adjacent building, which was private property, and not, as in *Fox* v. *City of Winona*, 23 Minn. 10, supported by posts in the street. In such circumstances the city is not liable. *Hixon* v. *City of Lowell*, 13 Gray, 59; *Jones* v. *City of Boston*, 104 Mass. 75; *Hewison* v. *City of New Haven*, 34 Conn. 136. Both these last cases follow *Hixon* v. *City of Lowell*, in preference to *Drake* v. *City of Lowell*, 13 Met. 292. And see 2 Dillon, Mun. Corp. § 1013, note 2; *Beardsley* v. *City of Hartford*, 23 Am. Law Reg. (N. S.) 117.

*Collester Bros.* and *Lewis & Leslie*, for respondent.

BERRY, J.[1] The charter of the city of Waseca (Sp. Laws 1881, *c.* 47,) provides, in section 5 of subchapter 6, that "the common council of said city shall have the care, supervision, and control of all the highways, bridges, streets and alleys, and public grounds, within the limits of the city." Section 4, subchapter 5, constitutes the city one road-district; section 1 of the same subchapter confers upon the common council power to levy taxes to raise a general fund for city purposes, and to expend any portion of the same for the improvement of the streets of the city; and section 5 empowers the council to assess and levy highway labor and taxes, and to direct the street commis-

---

[1] Dickinson, J., because of illness, took no part in this decision.

sioner when, where, and how to expend such labor and taxes. As respects their effect upon the liability of the defendant city, these provisions are substantially the same as those of the charter of the city of Minneapolis, considered in *Shartle* v. *City of Minneapolis,* 17 Minn. 284, (308,) and held to confer upon such city the exclusive care and control of its streets, and to provide it with means for that purpose. It was said in that case by Mr. Justice McMillan to be "well settled that a municipal corporation having the exclusive control of the streets and bridges within its limits, at least, if the means for performing the duty are provided or placed at its disposal, is obliged to keep them in a safe condition, and, if it unreasonably neglects this duty, and injury results to any person by this neglect, the corporation is liable for the damage sustained." The same doctrine was applied to the case of a sidewalk in *Moore* v. *City of Minneapolis,* 19 Minn. 258, (300.) These two cases are in point in the case at bar, and they show that it is the charter duty of the defendant city to use reasonable diligence to keep its streets and its sidewalks—which are but parts of streets, (*Furnell* v. *City of St. Paul,* 20 Minn. 101, (117,)—in safe condition for use, and that it is liable to those injured by its neglect of such duty.

The injury for which plaintiff seeks redress in this action was occasioned by the falling upon him of a wooden awning, overhanging the sidewalk of a public street in the defendant city. The plaintiff alleges that, from the manner of its construction, and from decay, the awning was, and for a long time had been, in a condition dangerous and unsafe to passers.upon the sidewalk. There is no sound reason why the duty of a municipal corporation to keep its streets "in safe condition" should not require it to take reasonable precautions against dangers from overhead as well as underfoot. If an awning, in a condition dangerous and unsafe to passers beneath it, is permitted to overhang a public street, it cannot be said that the street is in a safe condition. The danger and the unsafety may be as great, and the consequences as injurious, as in the case of a defect in the surface of the street; and the liability of cities for injuries occasioned by the fall of dangerous and insufficiently supported structures, which have negligently been permitted to overhang a street, has been accord-

ingly maintained in many decided cases. *Drake* v. *City of Lowell,* 13 Met. 292; *Day* v. *Milford,* 5 Allen, 98; *Hume* v. *Mayor of New York,* 74 N. Y. 264; *Grove* v. *Fort Wayne,* 45 Ind. 429, and cases cited; 2 Dillon, Mun. Corp. § 1013.

It is, however, contended by the defendant's counsel that section 2, subchapter 4, of defendant's charter, (in subdivision 13,) gives the common council authority, by ordinance, to remove and abate every nuisance, obstruction, or encroachment upon the streets and highways of said city; that the legislature has thus confided a discretion to the council, instead of imposing on it a duty; that the city had no right to remove an awning except by means of an ordinance, either general or particular; and that in the absence of such an ordinance the city is not liable. We do not agree to this. In the first place, the position that the remedy by ordinance is exclusive, is an assumption wholly unwarranted by the charter. There is nothing whatever to show that the general "care, supervision, and control" of all the highways and streets in the city, imposed upon the council, is limited by the provision cited from section 2. Neither is it reasonable to suppose that it was ever contemplated that the removal or abatement of a particular nuisance, obstruction, or encroachment upon the streets or highways of the city, often demanding immediate action, should await the passage of a city ordinance. In all probability, the principal, if not the sole, purpose of subdivision 13 was to empower the council to make general rules regarding such removal or abatement. In the second place, even if the remedy by ordinance were exclusive, then, whether the council could be compelled to pass one or not, it would be clear negligence not to do so. The council being charged with the care, supervision, and control of the streets, it is their duty to exercise the same in such manner as they are empowered to do, whether by ordinance or otherwise.

These remarks are equally applicable to the eleventh subdivision of section 2, (above cited,) by which the council is authorized, by ordinance, to "regulate and keep in repair  *  *  *  sidewalks,  *  *  * and to prevent  *  *  *  any person obstructing the same."

It appears from the complaint that the defendant became a corporation, February 23, 1881; that the injury complained of occurred

on January 20, 1883; and that at that time, and for a long time before, and to the defendant's "full knowledge," the awning had been dangerous and unsafe.   This state of facts is a sufficient answer to counsel's suggestion of hardship in imposing *an immediate* liability upon municipal corporations for defects in streets and sidewalks which they have inherited from their predecessors.   The law requires reasonable diligence on the part of the corporation, and while this would not impose a liability immediately upon organization, without reasonable time to ascertain and to remedy defects, it certainly would embrace such a case as is made by the complaint in this instance.

The complaint states a cause of action, and the order overruling defendant's demurrer is accordingly affirmed.