MORGAN R. NICHOLS, Administrator, *vs.* CITY OF ST. PAUL.

November 17, 1890.

**St. Paul—Duty to Make Safe Slopes to Streets.**—When grading its streets, it is the duty of the city of St. Paul to build and finish such slopes as there may be upon the sides thereof so that they will be in a reasonably and ordinarily safe condition as to such persons as may be lawfully in the streets, and so that they will not unnecessarily and unreasonably endanger the lives and limbs of the passers-by upon the sidewalks.

**Same—Acquiring Right to Make Slopes on Abutting Lots.**—A request to charge made by appellant from which, if it had been given, the jury might have inferred that at no time did the city have, or could it have acquired, the right to enter upon a lot abutting on a street, and either build the slope thereof or render the same reasonably safe and secure, was given with a qualification.   *Held,* that the request should have been wholly refused, and, further, that the qualification, as made, involved no error of which appellant can complain.

**Verdict—Evidence.**—Evidence considered, and *held* to be sufficient to sustain the verdict.

Appeal by defendant from an order of the district court for Ramsey county, *Kerr, J.,* presiding, refusing a new trial after a verdict of $2,500 for plaintiff.

*O. E. Holman,* for appellant.

*Butts & Jaques,* for respondent.

COLLINS, J.[1] This was an action brought to recover damages for the death of plaintiff's intestate, his son, aged $3\frac{1}{2}$ years at the time of his decease, caused, it was claimed, by the negligence of the defendant city. The plaintiff had a verdict, and the appeal is from an order refusing a new trial. The boy was killed by the falling of an embankment, situated upon private property, in a sparsely settled portion of the city. The street in front of this property, or lot, had been previously graded by the public authorities, by cutting through a slight elevation, the embankment being, at the point where a part of it fell, from six to eight feet high. At the bottom of the bank, on the street line, and on grade, a sidewalk eight feet wide had been constructed. After the street was graded, several parties had undermined the bank by removing building sand from its base, so that for some weeks, at least, before the accident there had projected over the excavation made by the removal of the sand quite a body of earth, principally top-soil. It was this overhanging mass, in which was the stump of a tree, that gave way, and, falling, caught and caused the death of the child.

Upon the trial there was much contention as to where the boy was when the earth fell. The plaintiff claimed, and produced evidence to show, that he was sitting on the inner edge of the walk, while the defendant contended, and introduced evidence to establish, that this was impossible; that from the manner in which the slope of the bank was left when the street was graded, and the position in which the body was found, the boy must have been off and inside the walk, playing about the excavation on private property, and consequently in a place where the city owed him no duty under the circumstances. Much of the defendant's testimony was to the effect that the street at this particular spot was actually graded according to the engineer's

<hr>

[1] Mitchell, J., took no part in this case.

plans and the contract for grading, both of which required that the slope should be at the rate of one and one-half feet horizontally for every foot of vertical cut. If, therefore, the vertical cut at the point in question was six feet or more,—and this was admitted,—the crest of the embankment, before any part of it fell, must have been distant nine feet, at least, from the place where it was said the boy sat, on the inner edge of the walk. This claim of the defendant was met by testimony that the crest of the bank was much nearer the street line, one witness testifying that, for a space of about 50 feet at this point, the slope was not finished according to the plans, and that he could stand upon the walk where the child was killed and touch the earth hanging over the excavation with his hand. We do not place the importance which has been attached to it by the corporation counsel upon the testimony as to exactly how the slope was left by the contractor, or at what precise distance from the street line, on which the walk was built, the crest of the bank was fixed. The duty was upon the municipality, when it graded the street in front of this lot, to acquire the right and to construct the slope thereon with reasonable and ordinary care, and with reference to the fact that a walk for pedestrians was to be laid at its base. This was an obligation which the city could not be permitted to unnecessarily and unreasonably disregard, thereby neglectfully endangering the lives and limbs of such persons as might be thereafter lawfully upon the walk. Its undoubted duty to the public was to so complete and finish the grading that the sloping bank in question would have been in a reasonably and ordinarily safe condition. In connection with some instructions as to the further duty of the city, to which no exceptions were taken, and the statement, made very prominent, that the plaintiff could not recover if the child when struck down was not upon the walk, but was a trespasser on the lot, this was the substance of the charge of the court as to the liability of the city. It is manifest that, upon this charge, the jury found that the boy was upon the sidewalk when the earth fell; and, upon this point, there was evidence sufficient to support the verdict. As it is conceded that he was killed by the earth or stump, or both perhaps, it has been painfully demonstrated that whatever may have been the distance, horizontally, from

the crest of the bank to the point directly above the edge of the walk, whether two feet, as claimed by the plaintiff, or nine feet, as claimed by defendant, it was inadequate and insufficient to prevent the accident. By its charter, the defendant was granted the exclusive care, control, and supervision of its streets and sidewalks. In express terms the duty was imposed to have and keep them in a safe and passable condition for public use and travel,—and this included protection from falling objects, as well as from defects or obstacles under foot,—and ample means and authority for properly performing this duty were provided in the same instrument. By their verdict, the jurors have declared that the city was unreasonably neglectful in this duty, and that an injury resulted, for which it is amenable. We discover no good reason on the facts, as they appeared on the trial, for interfering with the verdict.

The appellant urges as error the refusal of the court to give without qualification one of its requests to charge, which was, in effect, that defendant had no right to enter upon the lot, private property, for the purpose of filling the excavation or taking down the bank, and owed no duty to the deceased in this respect. The qualification complained of was that the city had the power under its charter, not only to condemn land for street slopes, but to keep the slopes in repair. Had this request as presented been given, the jury might have inferred that at no time did the city have, or could it have acquired, the right to go upon this lot, and either construct or render the slope reasonably secure. Probably we can safely assume that when removing the lateral support from this lot, and again when entering upon and removing soil from the lot itself, as it evidently did when grading, the city was not a trespasser. It could have obtained ample authority for doing all that was done and all that was incumbent upon it to do, in a variety of ways, either by consent of the lot-owner, or through the proceedings wherein the board of public works determined the damages and assessed the benefits, when ordering the improvement, or, possibly, by acquiring an easement for a slope in the manner provided by its charter; and it should not be presumed or inferred that the city had not, as a matter of fact, obtained the right to do all that was necessary for the protection of the public. The request

should have been wholly refused, and its qualification as made involved no error of which appellant can complain.

Upon the trial, defendant objecting, the plaintiff was permitted to show that, at a time subsequent to the grading, city laborers were seen hauling dirt from this bank, and thus undermining it; but, when charging the jury, the court plainly instructed them that no liability could be fastened upon the city by reason of this testimony. The appellant urges as error that the court should have gone further, and told the jury to disregard the same. Upon an examination of the flimsy character of this testimony, we are satisfied that it could have had no weight with the jury. But, in any event, if the charge of the court upon this point did not fully cover it, the counsel should have requested something further. This he did not do, nor did he in any way call attention to the alleged error.

Order affirmed.