INCORPORATED TOWN OF ACKLEY, Appellee, v. CENTRAL STATES ELECTRIC COMPANY et al., Appellants.

MUNICIPAL CORPORATIONS: Streets, etc.—Enjoining Unauthorized Maintenance of Wires. The maintenance of electric transmission lines across the streets and alleys of a city or town without a franchise right so to do constitutes not only a nuisance, but a trespass upon the property of the municipality, and may be enjoined by the municipality, irrespective of whether it has been damaged by such maintenance.

Headnote 1: 20 C. J. pp. 325, 329 (Anno.)

Headnote 1: 31 L. R. A. 798; 39 L. R. A. 619; 19 R. C. L. 850.

*Appeal from Hardin District Court.*—T. G. GARFIELD, Judge.

· July 1, 1927.

A temporary injunction was applied for, to enjoin the defendants from crossing the streets of plaintiff city with a wire or wires transmitting electric power. Defendant R. R. Hadley, at the same hearing, by cross-petition, applied for an injunction against plaintiff city from interfering with his construction of the line in controversy. A temporary injunction in favor of the city was ordered issued, and the prayer of the cross-petition denied. Defendants appeal.—*Affirmed.*

*C. H. E. Boardman,* for appellants.

*F. J. McGreevy,* for appellee.

Albert, J.—The plaintiff is a municipality under the laws of Iowa. Defendant R. R. Hadley operates a creamery plant within the corporate limits of the said town, and uses electricity as motive power therein. He had been purchasing electrical energy from the municipal plant owned by plaintiff for some years, but found it unsatisfactory and expensive, and at times the current was insufficient for his needs. This municipal plant was what is known as a "direct current" system, and had been in use for many years.

The Central States Electric Company, codefendant, is a public utility, furnishing electrical energy known as "alternating current," and has a high-tension line that extends to, but not within, the corporate limits of plaintiff town. The Marshall Canning Company has a plant within the city limits of said town, and through some alleged arrangements with the Central States Electric Company built a line from the corporate limits of plaintiff town to its plant, and purchased electrical energy from said Central States Electric Company.

Defendant Hadley became dissatisfied with the service he was receiving from the plaintiff's municipal plant, and contracted with the electrical company to purchase electricity from it, he to build his own line by poles and wires. In the agreement, also, was an arrangement with the Marshall Canning Company that he could connect his line with the line that the canning

company had within said city limits, and through their line procure electricity from the Central States Company, under which agreement he proceeded to the construction of the line, no poles therefor being set on the streets or alleys or any public ground belonging to said town. But in the construction of this line, his wires would necessarily cross several streets in the plaintiff town. While this line was under construction, differences arose between plaintiff and defendants, and some things were done by both factions that were not very creditable. The town brought this action, asking for a temporary injunction, which was granted by the court.

Prior to this, an action had been brought by the Incorporated Town of Ackley, plaintiff, against the Marshall Canning Company, with the result that an injunction was issued in favor of the town, enjoining the canning company from maintaining its wires across the streets, alleys, and public grounds of the plaintiff. Neither the electric company nor Hadley was a party to that action. The court in that case gave the canning company four months in which to remove its wires (poles being set upon the private right of way, as we understand it), and in event of appeal of that case, the order of removal was suspended; and, as we understand from the record, that case has been appealed. The facts and decree in that case are of no moment to us in this case, except as it may affect the Marshall Canning Company.

Some of the arguments made in this case are far afield of the real question in controversy. The evidence in the case shows that this line, which is supposed to be constructed to the Hadley plant, consists of two copper wires, three eighths of an inch in diameter. These wires were to cross the street from 30 to 35 feet above the surface thereof. It is conceded that none of the defendants had a franchise authorizing the construction of this line in said town. It is also conceded that none of the poles for the support of these lines of wire are or will be placed upon any town property, either streets, alleys, or public grounds. So far as the Central States Electric Company is concerned, it, of course, has no right whatever to enter said town and dispose of electrical energy therein, because it has no franchise.

If the Central States Electric Company could contract to sell electricity to Hadley under these circumstances, there would be nothing to prevent every other user thereof within the city

limits from making a similar contract with the electric company, and, therefore, Sections 5904 and 5905, Code of 1924, would be fully nullified, because the electric company would have the full advantage of furnishing its commodity to every resident of the town, notwithstanding the fact that it had no franchise whatever. If this process were allowed, then the electric company would have all the rights it would have under a franchise, without having procured one by a vote of the people, as required by the aforesaid sections of the statute. Such a nullification of the statute will not be countenanced by an equity court.

The question, therefore, narrows itself down to what, if any, rights the defendant Hadley had in this situation, and this question is still further narrowed by the fact that he has purchased and made arrangements for his own private right of way between his plant and the Marshall Canning Company's land. The question, therefore, is whether or not he has the right to stretch these wires across the streets and alleys of the plaintiff town.

Authorities bearing on this proposition are not very numerous, and among those found, many have no application, as, under the law of Iowa, municipalities own a fee-simple title to the streets within their boundaries.

As to the duties of the city with reference to the control and supervision of its streets, Section 5945, Code of 1924, reads as follows:

"They shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

Under this statute, is a street with wires stretched across it out of repair; or does the stretching of these wires across the street, under these circumstances, create a nuisance?

As to what should be deemed "nuisances," Section 12395, Code of 1924, reads as follows:

"Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action * * * may be brought to enjoin and abate the same and to recover damages sustained on account thereof."

Section 12396 reads:

"The following are nuisances: * * * (5) The obstructing or incumbering by fences, buildings, or otherwise the public roads, private ways, streets, alleys, commons, landing places, or burying grounds."

Are we to say that the stretching of these wires across the street is a nuisance?

2 Elliott on Roads and Streets (3d Ed.) 256, Section 830, states:

"It is not necessary, in order to constitute a nuisance, that there should be an actual physical obstruction to the public use upon the surface of the highway, for its use may be rendered as dangerous by objects above the way as by obstructions upon the surface. Thus, it is said, in a recent case, that 'the permanent and exclusive use and occupancy of any public street or highway by any person, by the erection or maintenance of any structure on, beneath, or above its surface, which wrongfully obstructs or may obstruct such street or highway, is a misdemeanor, punishable as a public nuisance.' In accordance with this doctrine, a bay window in the second story of a house, sixteen feet above the sidewalk, projecting between three and four feet beyond the line of the street, was held a public nuisance which could not be justified by a city ordinance, and its construction was enjoined."

Also, see 6 McQuillin on Municipal Corporations, Section 2775. In Volume 8, Section 2775, of the same work, a supplement thereto, quoting from a Louisiana case, it is said:

" 'The public right to the use of streets goes to the full width of the street, and extends indefinitely upward and downward.' On the ground, therefore, of failure to exercise ordinary care to keep public ways in a reasonably safe condition for travel, municipal negligence may be established, on the theory of a defect in the street, in action for damages due to injuries to travelers from awnings, signs, billboards, poles, electric wires, or other objects suspended over, or near thereto, or falling into a street or sidewalk."

In the case of *Wheeler v. City of Ft. Dodge*, 131 Iowa 566, we had before us an analogous question. The city, by resolution, had granted the use of its streets to the "Commercial Club," for a Fourth of July celebration. As one of the attractions for the celebration, one DeEtta was employed by the parties

in charge of the celebration, to put on what was known as "a slide for life." A wire was stretched from the top of the courthouse, crossing Central Avenue, the street in controversy, the lower end being tied to a telephone pole somewhat farther up an intersecting street. A female acrobat, "hanging by her teeth" to a pulley which rolled upon this wire, was to slide down the wire from the courthouse roof to the pole, as above specified. The tackle or harness carrying her broke, just as she left the courthouse, and she fell some three or four stories to the sidewalk below, and struck and injured the plaintiff in the case. The contention of the city was that the wire stretched across Central Avenue was not an obstruction to or an encroachment upon the public way, and was not in any sense a nuisance. The opinion says:

"With this contention we cannot agree. The fact that the wire in most of its course passed through the air above the heads of the people using the walks and carriageway below does not remove its character as an obstruction of the street. The public right goes to the full width of the street, and extends indefinitely upward and downward, so far at least as to prohibit encroachment upon said limits by any person by any means by which the enjoyment of said public right is or may be in any manner hindered or obstructed or made inconvenient or dangerous. The principle here stated has been upheld in a multitude of cases, of which we need only to call attention to the following: In *Bohen v. Waseca*, 32 Minn. 176 (19 N. W. 730, 50 Am. Rep. 564), the city was held liable for injury occasioned to a traveler on the sidewalk by the fall of an awning which projected into the street space from an abutting building. The court there well says: 'There is no sound reason why the duty of a municipal corporation to keep its streets in a safe condition should not require it to take reasonable precautions against dangers from overhead, as well as underfoot.' See, to the same effect, *Hume v. Mayor*, 74 N. Y. 264, and *Drake v. Lowell*, 13 Metc. (Mass.) 292. A bridge or covered viaduct erected between the upper stories of buildings on opposite sides of a street for the convenience of the business of the owner of said buildings has been declared an obstruction to the street constituting a nuisance, although it effected no physical obstruction or obstacle to the use of the roadway below. *Bybee v. State*, 94 Ind. 443 (48 Am. Rep. 175). * * * A similar rule has

been applied to an injury to a traveler by a falling limb from an overhanging tree. *Jones v. City of New Haven,* 34 Conn. 1. Also an injury caused by the falling of a pole which citizens had been permitted to erect in the street. It was there said to be immaterial that the pole was set in a place or position where it did not actually obstruct travel. *Norristown v. Moyer,* 67 Pa. 355. A bay window projecting into the street space from the upper story of an abutting building is held by the Pennsylvania court to be a nuisance which cannot be justified or maintained even by an express ordinance of the city. *Reimer's Appeal,* 100 Pa. 182 (45 Am. Rep. 373). The maintenance of a dangerous boiler or heating apparatus in an area way under a public street is a nuisance, for the existence of which the city may be held responsible. *Beall v. Seattle,* 28 Wash. 593 (69 Pac. 12, 61 L. R. A. 583, 92 Am. St. Rep. 892). See, also, *Abilene v. Cowperthwait,* 52 Kan. 324 (34 Pac. 795); *Smith v. Leavenworth,* 15 Kan. 81; *Woodbury v. Dist. of Col.,* 5 Mackey (D. C.) 127. * * * If we are not to abandon this principle, so just and reasonable in itself, there is no escape from the conclusion that the presence in the streets of defendant city of the apparatus erected for the so-called 'slide for life' was a nuisance. But, even if for any purpose or in any exceptional sense of the word the existence of the naked wire stretched across the public way can be said not to constitute a nuisance, yet, when it is considered, as it should be considered, with reference to the purpose of its erection and the use to which it was to be subjected, its unlawful character is placed beyond a reasonable doubt. * * * In other words, if the known use of the structure or thing existing in the street is of a character which is manifestly dangerous to persons lawfully using the street, it is a nuisance, for which the city is to be held liable.''

In *Blivin v. City of Sioux City,* 85 Iowa 346, at 351, with reference to this matter, we said:

''This duty extends, not merely to the surface of the street or walk, but to those things within its control which endanger the safety of those using the street or walk properly. It may not be the duty of a city to open to public travel a given street to its full width, and it may not be its duty to construct a sidewalk thereon; but when it has assumed that obligation, it should make

the street and the walk reasonably safe for the uses for which they are intended."

It must follow, as a logical conclusion from these various cases, that, to be an obstruction to the street, within the meaning of the statute, it is not necessary that the thing charged to be an obstruction rests upon or is in immediate contact with the surface of the street. It may be an object which is out of the reach or way of ordinary traffic; yet, if it be so situated with relation to the street that it may endanger the traveling public, it comes within the rule against obstructions, especially where it is of a dangerous character. That wires charged with electrical energy are of this character is so well known that the court will take judicial notice thereof. More than this, it is well known that many times streets of cities and towns are used for moving buildings or other structures, which could not be done where wires are this distance from the ground. Of course, we do not have before us now the question of regulation of such wires where the line is being lawfully constructed.

It is apparent from what has already been said by this court and the courts of our sister states that an attempt to place, or the placing of, these wires across this street would be an invasion of the rights of the city, and wholly without right or authority of law. Such action on the part of the defendant being wrongful and unlawful, it must, of course, be said that the same would create a nuisance, under the many decisions heretofore cited. We are, therefore, of the opinion that the defendants had no right to stretch these wires across the streets or public grounds of the plaintiff, and therefore plaintiff was rightfully granted the temporary writ.

However, from another angle, the city being the owner in fee simple of the streets, of necessity its rights extend above the surface thereof. How far, we need not determine in this case; but, since it is entitled to the absolute control and occupancy of the space above these streets, any invasion thereof by stretching wires thereon at this height of necessity is an infraction of the rights of the city, and amounts to a trespass. Especially must this be true where the invasion is by wires charged with electrical energy that may be dangerous to the public.

Appellants insist, however, that plaintiff was not entitled to an injunction, because it has not shown damage.

That a municipality may sue by injunction to abate a thing

constituting a nuisance or an unreasonable interference of the way by the public is now well established. 7 McQuillin on Municipal Corporations, Section 1371, and the numerous cases there cited. The statute makes it the duty of the town to keep its streets free from obstructions or nuisances. In the performance of its duty, it had the right to call to its aid a court of equity; and that is what it is doing in this case.

We conclude that the order of the lower court granting the temporary injunction against the defendants was right, and equally, the defendants were not entitled to an injunction, as they pray in their answer.—*Affirmed.*

EVANS, C. J., and DE GRAFF, MORLING, and KINDIG, JJ., concur.