WILLIAM G. HEIDEMANN v. CITY OF SLEEPY EYE.[1]

December 13, 1935.

No. 30,491.

*Streissguth & Fordyce,* for appellant.
*Elmer A. Hauser* and *Flor & Reim,* for respondent.

HILTON, JUSTICE.

In this, an action against the city of Sleepy Eye, Minnesota, to recover damages for personal injuries, defendant had a verdict. Plaintiff appeals from an order denying his motion for a new trial.

The plaintiff, a pedestrian on the main street of the city of Sleepy Eye, was severely injured on June 11, 1934, by the falling, during an ordinary windstorm, of a wooden cornice from the top of a frame building owned by Nellie Berkner. She was not a party defendant. The building was over 50 years old. The evidence is not clear as to when the cornice was placed on the building, but it had been there at least 40 years. The cornice extended about two

[1]Reported in 264 N. W. 212.

feet above the front wall of the building and then out at a right angle over the street approximately the same distance.

The rear wall of the cornice was constructed of 2 x 4 timbers two feet long nailed vertically to a 2 x 4 plate running the full width of the building; the plate in turn was nailed to a header on the main front studding of the building. On the upper ends of the two-foot timbers, 2 x 4 studdings were fastened horizontally to form the top frame of the cornice. The front and the lower side of the horizontal part of this frame were covered with siding; all other sides and ends were covered with common boards over which there was tin roofing. Five supports made of 2 x 4 timbers were fastened from the rear top edge of the cornice down to and on the roof of the building. After the cornice had fallen, its bottom plate and the header to which it was attached were discovered to be entirely decayed from dry rot. While it was in position on the building there was no way of learning of this condition without tearing off some of the boards and tin with which the header and plate were inclosed. This had never been done. Outwardly the cornice appeared to be in good condition. This was true as late as May, 1934, the month preceding the accident. The building had been painted in 1933, and no decay was noticed. One end of the cornice often had been used by private workmen, and also by a city official charged with the duty of inspecting obstacles overhanging the streets who had inspected this cornice periodically, as a stepping place to enable them to get onto a higher adjoining building, and no defects of any kind had been observed. The husband of the owner of the building at one time fastened the 2 x 4 supports more securely; the cornice appeared to be all right.

There were 62 assignments of error in the motion for a new trial, 35 of which are urged on this appeal. They principally have to do with the failure of the court to give certain requested instructions; the giving of claimed erroneous instructions; rulings on the admission and rejection of evidence; and that the verdict was not justified by the evidence and was contrary to law. Manifestly it will not be necessary to pass separately upon each of the assignments. However, all will be given consideration, and this

opinion will cover all the points necessary for a determination of the case.

The duty is imposed upon a municipality to exercise reasonable care and diligence to keep and maintain its streets and sidewalks in a safe and passable condition for public use and travel. Moore v. City of Minneapolis, 19 Minn. 258 (300); Shartle v. City of Minneapolis, 17 Minn. 284 (308); 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 6818, *et seq.* This duty includes the protection from falling objécts as well as from defects and obstacles underfoot. Nichols v. City of St. Paul, 44 Minn. 494, 47 N. W. 168; Bohen v. City of Waseca, 32 Minn. 176, 19 N. W. 730, 50 Am. R. 564. However, this is not an absolute duty. The city is not an insurer of safety. Miller v. City of St. Paul, 38 Minn. 134, 36 N. W. 271. In Nichols v. City of St. Paul, 44 Minn. 494, 47 N. W. 168, the city had cut through an embankment adjoining a sidewalk. Dirt from the embankment fell on a child playing on the sidewalk. There the city itself created the danger and thus had actual knowledge of it. In Bohen v. City of Waseca, 32 Minn. 176, 19 N. W. 730, 50 Am. R. 564, the city was held liable for the injury caused by the falling of a wooden awning from a privately owned building. However, in that case the statement of facts indicates that the city had known for a long time before the accident of the defects which caused the falling and of the danger incident thereto, but [32 Minn. 177] "negligently suffered it to remain in its dangerous condition." No analogy can be made from those cases to the situation with which we are here confronted.

Plaintiff contends that he is entitled to the benefit of the presumption of negligence that arises under the doctrine of *res ipsa loquitur*. The trial court rightly refused so to charge. Plaintiff bases his contention upon the fact that this court has held that a city has exclusive control over its streets. Peterson v. Village of Cokato, 84 Minn. 205, 87 N. W. 615; Shartle v. City of Minneapolis, 17 Minn. 284 (308). One of the elements essential to the application of the rule requires that the instrumentality causing the injury must be exclusively and wholly under the control of the defendant. McGillivray v. G. N. Ry. Co. 138 Minn. 278, 164 N. W.

922; Ulseth v. Crookston Lbr. Co. 97 Minn. 178, 106 N. W. 307. As a practical matter, in this case it cannot successfully be urged that the city did have such control over the cornice. Certainly it cannot be said that the defendant alone, if at all, was responsible for the accident. In Sullivan v. Minneapolis St. Ry. Co. 161 Minn. 45, 56, 200 N. W. 922, 926, it was stated: "But when the accident is brought about in a way that the responsibility therefor does not rest wholly upon the defendant, the doctrine [*res ipsa loquitur*] obviously should not and does not apply."

The court withdrew from the consideration of the jury the issue of actual notice of defect, and this is assigned as error. There was no evidence of any kind indicating that any official of the city of Sleepy Eye, ever, at any time, had actual notice either of the decayed condition of the cornice or of faulty construction in the first place. Under the circumstances, the court could not have done otherwise.

The balance of this opinion will be liberally interspersed with quotations from the trial court's memorandum, which, in certain instances, adequately refutes assignments of error. The trial court stated:

"Plaintiff complains because the court did not instruct the jury that the cornice in question was a nuisance as a matter of law. 'An abutting owner owns to the center of the street subject to the easement of the public, and may use it for a purpose compatible with the free use by the public.' [Kelty v. City of Minneapolis], 157 Minn. 430, 196 N. W. 487; [see also West v. Village of White Bear, 107 Minn. 237, 119 N. W. 1064; Town of Kinghurst v. International Lumber Co. 174 Minn. 305, 219 N. W. 172]. No one will seriously argue that trees planted in boulevards or lamp posts on sidewalks which do not interfere with ordinary travel constitute nuisances. It is only when the obstruction becomes inconsistent with the public use or easement that it becomes a nuisance.—[2 Mason Minn. St. 1927] § 9580, defines a nuisance in part as 'an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property.' Until there was actual or construc-

tive notice of the dangerous condition of the cornice it could not have been held to be a nuisance."

Certainly the cornice did not obstruct or interfere with the traffic below it. It would seem that there can be a distinction made between a nuisance and a hidden danger such as there was in this case. Cases cited by plaintiff on this point do not cover the situation here for in them the city either had actual notice of the dangerous condition that existed or could have learned of it by the exercise of reasonable care and diligence. See Bohen v. City of Waseca, 32 Minn. 176, 19 N. W. 730, 50 Am. D. 564; Parker v. City of Macon, 39 Ga. 725, 99 Am. D. 486.

Plaintiff complains of the court's failure to give certain requested instructions to the effect that the city should take notice of the fact that wood has a natural tendency to decay. The court did charge that: . "This duty involves the anticipation of defects * * * that are the natural and ordinary results of years, wear and tear, decay and climatic influences." This court has held that a city is bound "to take notice of the certain tendency of wooden sidewalks to decay and to become in an unsafe condition." Murphy v. City of South St. Paul, 101 Minn. 341, 342, 112 N. W. 259; Furnell v. City of St. Paul, 20 Minn. 101 (117). The court's charge was sufficient. While it is natural to expect decay in wooden sidewalks that are located on damp ground and which are subject to constant exposure and heavy use, it does not follow that there is a likelihood of dangerous defects resulting from decay in wood that is entirely inclosed and protected from the elements as was true of the plate and header in the cornice.

Fault is found with the court's charge as to the duty of the city to make an inspection:

"Something has been said about the duty of making inspection. There is no rule that I can give you as to when or how often a city must make an inspection of its streets and sidewalks. Some may need frequent inspection, depending upon conditions and construction and others may not need any inspection. Whether or not any duty rested upon the city in this particular case to make

an inspection of the building * * * is a question that, I think, is entirely * * * for the jury. The question you must ask yourselves in this case is: Whether or not the city was negligent in failing to discover the defect in question? Did the city exercise ordinary care? Could it, by the exercise of ordinary care, have discovered this defect? This presents a question of fact; a question of negligence which is purely a question for the jury to determine."

Plaintiff contends that the duty of inspection is a positive one. It was for the jury to determine whether or not the city had exercised ordinary care. Kennedy v. City of St. Cloud, 90 Minn. 523, 97 N. W. 417. Whether a defect is of such a nature that the city ought to anticipate it as likely to cause injury generally is a question for the jury. Estabrook v. City of Duluth, 142 Minn. 318, 172 N. W. 123. The learned trial court in its memorandum stated:

"The defect here in question was upon private property. I know of no rule that requires a city to go upon private property to hunt for defects where there is no reason to suppose they exist. [Svendsen v. Village of Alden], 101 Minn. 158, 161, 112 N. W. 10.

"There is some doubt in my mind whether a verdict in plaintiff's favor could have been sustained. There is no testimony in the case tending to show that a reasonable inspection would have disclosed any defect. Perhaps a stronger reason why plaintiff could not prevail in this case is that the city was under no duty to make an inspection of the building because the testimony fails to show any reason for believing or supposing that any defect in fact existed.

. " 'Where an injury was occasioned by a defective sidewalk, an omission of duty is not to be inferred from a failure of the agents and servants of the city to search for defects in the sidewalk, where there was no reason to suppose defects existed.' City of Lincoln v. Pirner, 59 Neb. 634, 81 N. W. 846; see also City of Omaha v. Kochem, 74 Neb. 718, 105 N. W. 182.

"In Hembling v. City of Grand Rapids, 99 Mich. 292, 58 N. W. 310, the court says:

" 'In the absence of actual notice, municipalities are only liable for such defects in sidewalks as are apparent, or are suggested by appearances, or which are disclosed by a 'test in the nature of the ordinary use of such walks.'

"Under the Iowa rule to render a city liable it must either have actual notice of the defect or the defect must be notorious.— [Krska v. Incorporated Town of Pocahontas], 200 Iowa, 594, 203 N. W. 39; [Cramer v. City of Burlington], 39 Iowa, 512.

"Under the Minnesota rule the city must have actual or constructive notice of the defect. [Moore v. City of Minneapolis], 19 Minn. 258 (300). And where constructive notice is relièd upon there must be 'proof that the defect had existed for such length of time that the city authorities, by reasonable diligence in supervision, would or should have discovered it.' [Miller v. City of St. Paul], 38 Minn. 134.

"There is no proof in this case that the city in the exercise of ordinary diligence would or could have discovered any defect and there is no showing that the defect existed any length of time prior to the accident. This building had stood there for more than fifty years. There is no proof that the city had any knowledge of faulty construction. The front of this building was of the ordinary type found in the earlier construction in all small towns. The situation here is very different from the ordinary sidewalk defects which are frequent and may always be expected. Inspections there are necessary. But this situation should come under the rule that the city does not have to search for defects where there is no reason to suppose that any defects exist, and there is in this case no showing that the city had any reason to suppose that a defect here existed."

A witness for plaintiff testified that to make an adequate inspection it would have been necessary to tear off the outside boards and the tin covering them. It would be going to great lengths to require a city to go onto private property and make that kind of an inspection. It probably would have disastrous results. In Ryder v. Kinsey, 62 Minn. 85, 64 N. W. 94, 95, 34 L. R. A. 557, 54 A. S. R. 623, it was held that even the owner of a building need

not tear apart his building in order to discover hidden dangers and thus protect passers-by. The court there stated [62 Minn. 89]:

"* * * it affirmatively appears by the uncontradicted evidence that the defect in the construction was a concealed one. Neither is there any evidence in the case tending to show that the defect could have been discovered by the exercise of ordinary care in inspecting the building. The prima facie presumption arising from the undisputed facts is that the defect could not have been discovered by the exercise of such care; for the sheeting on the inside and the studding and the brick wall on the outside of them concealed the defect, and the absence of sheeting next to the brick wall and the anchoring of it to the sheeting by the large nails could not have been discovered, by any means disclosed by the evidence, except by the exercise of extraordinary care * * *. Ordinary, not extraordinary, care, was the measure of the defendant's duty in the premises."

All other assignments of error which merit consideration are adequately and sufficiently covered by the following portions of the trial court's memorandum:

"Plaintiff has excepted to the court's refusal to give the jury his requested instruction number XIII, which is as follows:

" 'In this case it is no defense to the city that Mrs. Berkner, the owner of the building upon which the cornice was constructed, may also be liable. The plaintiff, having elected to sue the city, has the right to recover the entire damage from the city if under the evidence you find the city guilty of negligence, proximately resulting in injuries to the plaintiff, and the fact that Mrs. Berkner may also be liable is a fact not to be considered by you in any way as affecting the plaintiff's right to recover from the city.'

"Instead of giving the above requested instruction, the court gave the following:

" 'The plaintiff, having elected to sue the city, has the right to recover his entire damages from the city, if under the evidence and rules given you in this court, you find the city guilty of negligence proximately causing the injuries to the plaintiff; and the fact that Mrs. Berkner may also be liable is a fact you need not consider

in this case, as the plaintiff in this case, as in all negligence cases, has the right to sue one or more of joint tort feasors if any one of them contributes to cause the injuries complained of or damages sustained.'

"To this instruction as given to the jury no specific exception was taken. It was given because of plaintiff's request as above. Counsel for both parties in their talks to the jury had commented on Mrs. Berkner's ownership and her liability was talked of to the jury. After the jury had deliberated all night they asked for further instructions with respect to the ownership of the building and liability of the city. The following instruction was then given:

" 'On the question of liability of the owner, and that is what you were asking about, where several persons are guilty of negligence, take for instance an automobile accident, several people are involved, the plaintiff who receives the injuries has the right to sue any one or more than one of all of the parties who are the cause of the accident; he may sue one; he may sue two, or he may sue all of them; he can pick out whoever he pleases to sue who is liable for the accident. He has his choice. In this case he could have sued Nellie Berkner alone, if he wanted to, or he could sue the city alone; that is his choice; he could have sued both of them.'

"In view of the discussions before the jury with respect to this matter of ownership and liability, and particularly in view of plaintiff's requested instruction number XIII, I am of the opinion that the instructions given in this respect were fair to both parties. They are in effect the same as plaintiff's request. The jury were specifically told, both in the main charge and on the following morning that if the city failed to exercise ordinary care in keeping its streets and sidewalks safe for travel it was liable to any one who was injured as a result of the want of such care; where there was no contributory negligence; and the jury was told that in such case it became the duty of the jury to find a verdict in plaintiff's favor.

"The court in its main charge said to the jury:

" 'You may ask yourselves this question: What would a person of ordinary prudence, charged with the care resting upon a city in caring for its streets and sidewalks, have done under the same cir-

cumstances? That is the test in cases of this kind, in fact in all negligence cases.'

"On the following morning the court said to the jury:

" 'Now if you are a person of ordinary prudence, what would you have done under those circumstances as disclosed by the evidence?'

"There was more said along the same line. It seems to me that when the charge is considered as a whole in this respect, the jury could not have been misled as to the duty resting upon the city with respect to caring for its streets, and in my opinion this later statement to the jury, though somewhat loosely put, did not in any way influence the verdict."

To this we might add the statement of this court in Leystrom v. City of Ada, 110 Minn. 340, 343, 125 N. W. 507, 508:

"It is impossible for this court to prescribe exact limitations from which, in all cases, it may be determined what character of defect in a public street constitutes negligence on the part of the municipality. Given a defect and consequent injury, the question of negligence must generally be submitted to the good sense of the jury."

Further the trial court stated:

"Exception is taken to that part of the charge wherein the court stated: 'Cities in caring for streets and sidewalks are not required to anticipate hazards of rare or highly improbable occurrences, but must exercise ordinary care to keep their streets safe for all ordinary hazards,' etc. The defendant was required to exercise ordinary care and no more. I believe the rule in this state to be that the 'risk reasonably to be perceived defines the duty to be obeyed.' If the defendant through its servants could not reasonably foresee that harm could come to any one because of the cornice in question, then no liability would follow. One must exercise ordinary care to avoid injuring another.—[Berlin v. Koblas], 183 Minn. 278, 236 N. W. 307. No liability would lie unless the city knew or should have known of the obstruction, and that injury might reasonably have been anticipated from act or omission of the city. [McDowell v. Village of Preston], 104 Minn. 263, 116 N. W. 470, 18

L.R.A.(N.S.) 190; [see also Briglia v. City of St. Paul], 134 Minn. 97, 158 N. W. 794, L. R. A. 1916F, 1216."

The order appealed from is affirmed.

STONE, JUSTICE (concurring).
In my opinion, plaintiff had no case, as a matter of law.