Florence Swanson, Appellee, v. S. S. Kresge Company, Appellant.

Gen. No. 40,885.

Opinion
filed December 5, 1939.

BURT A. CROWE, of Chicago, for appellant.

BUSCH & WEISBROD, of Chicago, for appellee; MARTIN O. WEISBROD, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued to recover for injuries resulting from a fall on the stairway of defendant's department store. The jury returned a verdict finding defendant guilty and assessing plaintiff's damages at $750. Defendant appeals from a judgment entered upon the verdict.

Plaintiff filed a statement of claim consisting of three counts. No proof was introduced in support of the second and third counts, so that it is only necessary to state the allegations of the first count. It alleges that prior to and on November 2, 1935, defendant maintained and possessed a certain store or salesroom located at 227 South State street, Chicago, to which the general public was invited for the purpose of examining, inspecting or purchasing goods, wares and merchandise; that it then and there became and was the duty of defendant to keep and maintain said store and the floor thereof in a "reasonable" safe condition so as not to injure such members of the general public who

were by the invitation of defendant in and upon the premises; that at the time and place in question and prior thereto plaintiff was in the exercise of ordinary care for her own safety; that on the date aforesaid plaintiff entered said store or salesroom lawfully and rightfully, for the purpose of inspecting, examining or purchasing goods, wares and merchandise, and while she was in said store defendant then and there, not regarding its duties in the premises, carelessly, negligently and improperly permitted the said floor and steps leading into the basement to become in a dangerous and unsafe condition, that is, a metal strip on the steps leading into the basement was loose, bent and not properly affixed to said steps; that by means of the premises and the negligence of defendant plaintiff was then and there caused to and did fall to and upon the floor and steps with great force and violence, and as a result and consequence of said negligence of defendant sustained severe and permanent injuries, etc., to the damage of plaintiff in the sum of $1,000. Defendant, in its answer, admitted that it owned, operated and controlled the store, but denied each and every allegation in each of the counts, and answered that defendant was not guilty of any of the acts charged by plaintiff in the statement of claim and that the injury and damage, if any, was sustained through plaintiff's own fault and negligence. Plaintiff propounded to defendant several interrogatories, which were answered by defendant. Rule 149 of the Civil Practice Rules of the municipal court provides that the answers to interrogatories may be used in evidence, but defendant did not introduce in evidence any of the answers, and concedes that none of the interrogatories or answers can be considered as evidence.

Defendant produced no evidence but filed motions for a directed verdict at the close of plaintiff's evidence and again after defendant rested. Defendant contends: "I. Plaintiff failed to prove that the defendant

was negligent. II. The court erred in refusing to direct a verdict at the close of the plaintiff's case and again at the close of all the evidence. III. The court erred in refusing to grant defendant's motion for a new trial. IV. The court erred in refusing to grant defendant's motion for judgment in its favor notwithstanding the verdict." Points II, III and IV are based upon the assumption that point I is a meritorious one. The argument of defendant is that "the plaintiff failed to prove that the alleged defective condition of the metal stripping existed before the time of the occurrence of the accident and failed to prove that the defendant, through any negligence on its part, caused the condition or that the condition had existed for a sufficient length of time so that the defendant, in the exercise of ordinary care, should have had notice of that condition." Defendant states in its brief that it was unable to produce any witnesses who might have been able to describe the condition of the stairway at the time in question for the reason that the trial took place over three years after the date of the accident. Defendant, in other words, intimates that the instant suit is what is known as a blind case. The record does not justify this position of defendant. The suit was commenced on March 7, 1936. Plaintiff testified that as soon as she had fallen people gathered around her, and that she was then taken upstairs to the second floor to a "medical station," and a nurse put some bandages on her legs and told her that the doctor was busy with someone else who had been hurt and that she should wait until he saw her; that "it got so long in waiting I was worried about mother downstairs . . . so I descended the stairs and came down stairs, very nervous and shaking," and met her mother. It appears, therefore, that defendant had notice of the accident to plaintiff immediately after it occurred. As to the accident, plaintiff testified that on the afternoon of

the day in question she went to defendant's store to purchase a typewriter cleaning brush; that on the main floor she was told by one of the clerks that she would find such a brush in the basement; that she left her mother on the main floor and started to descend the stairway leading to the basement; that she took a step from the floor to the first step of the stairway and caught on something and it threw her; that she tried to grab the railing but she was thrown forward so rapidly that she went head over heels practically all the way down the stairway; that "my heel hooked behind something when I fell;" that when she returned to the first floor, after she had been at the "medical station," she and her mother went to the place where she had the accident and "looked at the spot that I had fallen from and found that this stripping was raised at that right hand side of the stairway. . . . And I knew that was what I had fallen over because my heel hooked behind something when I fell, threw me head first." After plaintiff's mother had testified that when plaintiff returned to the main floor they went to the stairway in question, the following occurred: "Q. Will you please state to the Court and jury what you saw when you went to look at those stairs? A. I saw the stripping was raised, and it was raised I would say, well about an inch * * *. The Court: Describe as best you can what you saw, madam. A. I saw the stripping was raised. Mr. Weisbrod [attorney for plaintiff]: Q. By the 'stripping' will you tell the Court and jury just what you mean? A. Well, it is that strip on the front that holds whatever it is down on the step, on there. Q. And what was this strip composed of? A. Metal. A sort of metal strip. . . . Q. Was this strip on the tread of the stair, that is, on the flat part that you walk on? A. Oh, yes, yes. Q. Was the metal on the back or front of the tread of that step? That is, here is the stair, here is what we

call the tread. This is what you step on. A. Yes. Q. There is a strip on it? A. Yes. Q. Was the strip here, or here, or here, indicating front, center or back. A. Well, I just could not describe that now. It was on the flat—Q. Yes. A. And it was raised and it sloped. The metal was raised and it was loose and it sloped down on both sides. Mr. Weisbrod: All right. The Court: Q. What sloped, the step or the strip? A. No, the metal, the stripping. Mr. Weisbrod: Q. This was laying on the step? A. Yes. Q. Do you recall what step it was that this strip was raised on? A. It was the first step off the landing. Q. From off the landing? A. From the top. . . . Q. Now as—I see—now as you walked down those stairs will you state what part of the stair it was which had this metal strip raised, that is, was it in the middle on the right or to the left or where? A. Well, I would say about a foot and a half off the right. Q. From the right side. A. Yes. Q. And it extended for how long a distance in a raised position? A. I would say about four inches. Q. About four inches. Mr. Crowe [attorney for defendant]: She means in length. A. Yes. Mr. Weisbrod: Q. From one side to where it was flat to the other side where it was flat? A. Yes.'' Upon cross-examination witness stated that plaintiff told her at the time that that was the spot where she fell.

Defendant contends that it was incumbent upon plaintiff to prove ''that the alleged metal strip which is claimed to have been loose, bent and not properly affixed to the steps *became loose and unsafe by reason of some negligent act of the defendant, or that the loose, bent and improper condition of the metal strip had existed for so long a time prior to the accident that the defendant, in the exercise of ordinary care, should have had notice thereof;''* that ''there was an utter absence of any proof, that assuming it [the alleged defective condition] did exist or was created at or before

the time of the occurrence of the accident, that the defendant had a sufficient length of time to have had knowledge of it and to have remedied the alleged defect.'' Plaintiff contends that the jury had the right to find that the loosening and bending of the metal stripping was not something that occurred immediately prior to the accident but that it had been in existence for an appreciable period prior to the accident; that defendant's department store, located on State street, in the heart of the loop, was frequented by great numbers of customers, and that ordinary care required it to maintain some system of inspection which would discover that condition in time to remedy it before it resulted in injury to its customers; that defendant produced no evidence in that regard.

We will briefly refer to the cases cited by defendant in support of its position: In *Heneghan v. Carson Pirie Scott & Co.*, 285 Ill. App. 595, decided by this division of the court, the only evidence introduced by plaintiff in support of her case was that while shopping in defendant's store she was descending a stairway into the basement when her heel caught on the steel plate on the edge of the second step from the top, causing her to trip and fall to the bottom of the stairway, a distance of about six stairs. It appeared, therefore, that there was no proof that the stairs or the metal strip was in a defective or dangerous condition. We held that plaintiff had failed to make out a *prima facie* case. In *Jones v. Kroger Grocery & Baking Co.*, 273 Ill. App. 183, plaintiff slipped and fell on a small piece of spinach on an otherwise clean and visible floor. There it was held that the presence of the spinach at the instant when plaintiff fell was not proof of negligence on the part of the manager of the store. In *Deitz v. Belleville Co-Op. Grain Co.*, 273 Ill. App. 164, plaintiff, an invitee, was injured by stumbling over a piece of iron on an open lot, where anyone might see it,

and the evidence showed, affirmatively, that defendant had no knowledge of the presence of the piece of sheet iron. In *F. W. Woolworth v. Williams,* 41 F. (2d) (D. C.) 970, plaintiff, while in defendant's store, slipped and was injured. She testified that afterwards she noticed an oval-shaped spot on the floor that her heel had gone into and caused her to slip. From the opinion of the court it would appear that the spot testified to by plaintiff was such as might have been caused by ''dropping or spilling something on the floor.'' Witnesses for the defendant testified that they examined the spot where plaintiff fell, immediately after the accident, and that no substance appeared on the floor that could have caused plaintiff to slip. One of the witnesses testified that he had finished sweeping the spot in question a few minutes before the accident. There was no evidence to prove that defendant had either actual or constructive notice. *Leach v. S. S. Kresge Co.,* 147 Atl. (R. I.) 759, differs from the instant case upon the facts. In the remaining case cited by defendant, *Schnatterer v. Bamberger,* 81 N. J. L. 558, 79 Atl. 324, the facts are similar to the facts in the instant case and the ruling of the court supports defendant's instant contention. The plaintiff's evidence showed that there was a loosened brass edging or nosing originally fastened by screws to the outer edge of the step for protection of the wood from wear, which had become loosened or raised to such an extent that plaintiff's heel was caught in it, causing her to fall. The court held that such evidence did not make out a *prima facie* case; that it was necessary for plaintiff to prove that the defect ''(a) had been in fact brought to the previous notice of the defendant, or, failing in proof of such actual notice, that (b) the defect had existed for such space of time before that occurrence as would have afforded the company sufficient opportunity to make proper inspection of its stairways

to ascertain their condition as to safety, and to repair their defects." The *Schnatterer* case was decided March 17, 1911. On May 17, 1926, the same court, in *Stark v. Great Atlantic & Pacific Tea Co.,* 102 N. J. L. 694, 133 Atl. 172, had before it a case where the trial court, apparently following the *Schnatterer* case, directed a verdict for the defendant. Plaintiff appealed. In the opinion, while the court did not overrule or criticize the opinion in the *Schnatterer* case, it saw fit to announce the following rule: "But it is equally certain that there are conditions of disrepair and deterioration causing injury which from their very nature and character cannot come into existence coincident with the happening, but must, by more or less slow and gradual processes covering appreciable periods of time, have grown from a condition of reasonable safety to one not safe, as measured by the rule of reasonable care. Such cases would present a question for jury determination as to whether or not the condition had existed for such period of time as to give to the party chargeable with the care and maintenance reasonable time and opportunity to inspect and repair, if necessary." The court held that the case presented a question of fact for the jury to determine, and reversed the judgment of the trial court and remanded the cause for a new trial. *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 146 Atl. 282, presents a case similar to the instant one. The court said:

"The single question presented by the appeal is whether the facts stated, which are conceded by appellee's demurrer prayer, are sufficient in law to justify an inference that it was guilty of actionable negligence in permitting the step which occasioned the injury of which appellant complains to be in an unsafe condition.

". . .

"So that in determining whether the facts to which we have referred are sufficient to support an inference

of negligence, consideration must be given not only to the particular defect in the step which occasioned the accident, but also to other facts such as the purpose for which the stairway was designed, that it was likely to be used by large numbers of persons of varying degrees of physical strength and activity, and of all ages, and that the attention of such persons might very probably at times be diverted by articles about them displayed for the very purpose of attracting their attention. Under such circumstances, ordinary care required the proprietor not only to see that the stairway was so constructed as to be reasonably safe for use by persons who were themselves exercising ordinary care, but that it was maintained in that condition. The trial court reached the conclusion that the facts of this case were not legally sufficient to permit any rational inference that the appellee had failed to discharge either of those duties, and in arriving at that conclusion much reliance was placed upon the case of *Schnatterer v. Bamberger,* 81 N. J. Law 558, 79 Atl. 324, 34 L. R. A. (N. S.) 1077, Ann. Cas. 1912D, 139. In that case the plaintiff, while descending a stairway in defendants' store, caught her shoe in a loosened brass edging or 'nosing' on one of the steps, in consequence of which she was thrown and injured. The court there held those facts furnished no evidence of actionable negligence, because they did not show (a) that the defendants had been actually notified of the defect, or, (b) that it had existed for a space of time sufficient to charge them with constructive notice of it. *But we are unwilling to accept the reasoning of the court in that case or the conclusion reached by the trial court in this.* In that case the defendants must naturally have anticipated that the stairway would be used by a large number of people, and that as a result of such use the steps and any covering on them would become in time worn and defective, and as their duty to their

patrons to see that the stairs were safe for use did not end when they constructed them, they were also bound to inspect the steps at reasonable intervals to ascertain their condition, and not to wait until some person whom they had invited to the store broke his neck as a result of a defect which a seasonable inspection would have revealed. *And the defective condition which caused the accident was in itself some evidence of a failure to fairly discharge that duty.*

"*. . .*

"If there had been any evidence that the appellee had exercised ordinary care to see that the steps were properly constructed, and that it had exercised ordinary care to see that they were kept in a safe condition, then before it could have been charged with negligence in failing to prevent or remedy the defect it would have been necessary for the plaintiff to have shown that it knew or had had a reasonable opportunity to have known of it. But in the absence of any such evidence, the condition of the step immediately after the accident was sufficient to warrant the inference (a) that its construction was defective in material or design, (b) that the loosened strap had never been properly fastened down, or (c) that appellee had failed to make a reasonably careful inspection of the stairway. Under such circumstances and in the absence of any evidence tending to show what, if any, care appellee exercised to keep its premises in a safe condition for use by those who at its invitation entered its store to examine or purchase its wares, whether it was or was not negligent in failing to prevent or remedy the defect which caused the accident in this case was a question for the jury, and there was error in granting appellee's prayer." (Italics ours.)

In *Fowler v. South End Amusement Co.* (Mass.), 12 N. E. (2d) 718, the court held that where from the nature and character of the alleged defect it could be

found that the defect existed for a sufficient time to enable defendant, if due care were used, to discover and correct it before the accident, a case should be submitted to the jury, even if there was evidence for the defendant that the stairways were inspected every day.

We agree with the reasoning and the ruling of the court in *Dickey v. Hochschild, Kohn & Co., supra.* In our judgment the proof as to the defective condition of the step at the time of the accident to plaintiff showed a condition of disrepair that would warrant a jury in finding, especially in the absence of any proof by defendant, that the defective condition had existed for a space of time sufficient to charge defendant with constructive notice of it. In other words, plaintiff's evidence was sufficient to make out a *prima facie* case. In determining whether or not defendant had constructive notice of the defect, the character and location of defendant's store and the great number of people that shop there must also be considered. The absence of proof on the part of defendant strengthens plaintiff's evidence, as it is a rule well recognized in this State that where the evidence to prove a fact is chiefly, if not entirely, in control of the adverse party and such evidence is not produced, his failure to produce the evidence tends to strengthen the probative force of the evidence given to establish such claimed fact.

The instant case was well tried, as is evidenced by the failure of defendant to assign any of the errors usually assigned in cases of this character.

The judgment of the municipal court of Chicago is a just one and it should be and is affirmed.

*Judgment affirmed.*

John J. Sullivan, P. J., and Friend, J., concur.