## INGA AND L. S. ANDERSON v. HERMAN C. WINKLE.[1]

July 17, 1942.

No. 33,175.

[1]Reported in 5 N. W. (2d) 355.

*Hoke, Cobb & Janes* and *A. H. Clemens,* for appellant.

*Fraser & Fraser,* for respondents.

PETERSON, JUSTICE.

Inga Anderson, a blind woman, one of the plaintiffs in the two actions now before us, was injured by falling down the stairs of a building owned by the defendant. She brought an action for personal injuries, and her husband, L. S. Anderson, sued for loss of services and medical expenses. The two actions were consolidated for trial and resulted in a verdict of $1,500 for Mrs. Anderson and one of $300 for her husband. The defendant moved for judgment or a new trial in each case and appeals from an order denying both his motions. Two questions are presented: (1) Whether the evidence sustains a finding of negligence, and (2) whether plaintiff Inga Anderson was guilty of contributory negligence as a matter of law.

The plaintiffs' causes of action are based entirely upon negligence with relation to the condition of defendant's stairway down which Mrs. Anderson fell. The building had two floors. There were seven offices on the second floor patronized by approximately 50 people daily. The stairway, which was 42 or 44 inches wide, extended from the ground to the upper floor. The hallway at the top was a little wider. The long way of the hall was east and west with the stairway at the west end. A brass edging was fastened along the nose of the top step of the stairway for the purpose of holding down and protecting the edge of the rubberoid floor covering which lay along the hallway at the top of the stairway. The edging was 30 inches long and 14½ inches wide on top. There were parallel corrugations running lengthwise of the edging on the side toward the edge of the step. The part toward the floor covering was smooth and about an inch in width. When received from the factory, the edging had perforations, at intervals of about seven inches, running lengthwise, just behind the corrugated part, for the screws used to fasten it to the wooden floor.

Defendant acquired the building in 1927 about 14 years prior to the accident. Because of continual use, the edging had become so worn and the corrugation so reduced that the entire surface was smooth. About three years prior to the accident, the edging had become so badly worn on the side toward the handrail, where apparently the traffic was the heaviest, that it was necessary to nail it down on the edge along the rubberoid from the handrail side to within one foot of the other side. At the time of the accident the part which had no nails in it had become so worn that it was in substantially the same condition as the rest of the strip. Plaintiffs claimed that this part of the edging had been bent up along the edge from one-eighth to three-eighths of an inch above the rubberoid so that Mrs. Anderson's heel caught on it, causing her fall.

Accompanied by her daughter, plaintiff had been attending to some business in one of the offices. The office door opened into the hallway near the south side of the top of the stairway. As they came out of the doorway, her daughter closed the office door but testified that she retained her hold on her mother's left arm. Evidently Mrs. Anderson crossed to the farther side of the narrow hallway and turned toward the head of the stairs. She testified that in attempting to find the railing she slid her feet along, caught her heel on the turned-up strip, and fell headlong. Her daughter said that she did not relinquish her hold on her mother until it was broken by the fall.

Defendant denied actual knowledge of the defect. There was evidence tending to show that within half an hour after the accident the eastern edge of the north end of the brass edging near which Mrs. Anderson fell was bent up from one-eighth to three-eighths of an inch from the surface of the hall floor. Plaintiffs' theory is that defendant was negligent in failing to take notice that long and continual use of the stairs would cause such wear and tear of the edging that it would turn up, as it did, and that defendant not only had notice that such would be the inevitable result of the use of the stairs, but also that he had actual knowl-

edge of such fact, acquired while nailing down the strip three years before the accident.

Van Winkle, son of the defendant, testified that he swept the hall and stairway the day before the accident, going over the edging in question twice, and that it was not bent up at that time. He swept the hall three times a week and scrubbed it Sundays. But he also testified that the strip was in the same condition immediately after the accident as it had always been. He denied that the strip was raised as plaintiffs claimed. It was defendant's theory that plaintiff Inga Anderson fell down the stairs without fault on his part. The son's testimony as to the condition of the strip was contradicted by several witnesses.

■ A landlord who rents out parts of a building to various tenants, reserving halls and stairways for their common use, is a possessor of the parts reserved by him.

A possessor of premises used by business visitors, while not an insurer of their safety, is bound to exercise reasonable care to construct and to maintain his premises in a reasonably safe condition for their use. The duty is continuing in nature. It does not end with an original safe construction or installation, but continues so long as the premises are devoted to such use. Reasonable inspection during such use is a duty incident to the maintenance of the premises.

A possessor of land is subject to liability for the disrepair of a building which reasonable care would have discovered and made safe. A person under the duty to exercise reasonable care is bound to take notice of the ordinary operation of the laws and physical forces of nature. Heidemann v. City of Sleepy Eye, 195 Minn. 611, 264 N. W. 212; Williams v. Dickson, 122 Minn. 49, 141 N. W. 849, 851.[2] The cited cases involved the decay of wooden structures. In Williams v. Dickson, we said:

---

[2]"The following cases are in accord: Klugman v. Schwartz, 186 Minn. 139, 242 N. W. 625; Normandin v. Freidson, 181 Minn. 471, 233 N. W. 14; Mix v. Downing, 176 Minn. 156, 222 N. W. 913; Soper v. Erickson, 172 Minn. 377, 215 N. W. 865; Rose v. Mooers Bros. Inc. 161 Minn. 149, 201 N. W. 303; McNab v. Wallin, 133 Minn. 370, 158 N. W. 623; La Pray v.

" 'The "care, supervision and control" of a sidewalk,' said the court in Furnell v. City of St. Paul, 20 Minn. 101, 107, (117) 'being imposed upon defendant, no argument is needed to establish the proposition that such care and supervision require notice to be taken of the certain tendency of wood sidewalks to decay. This tendency is the result of natural causes, whose operation is so constant, familiar, and common as to be known to everybody. *To call that care and supervision which did not take into account this tendency to decay, would be a contradiction in terms. Such care and supervision would be a positive neglect of legal duty.'* " (Italics supplied.)

In Hastings v. F. W. Woolworth Co. Inc. 189 Minn. 523, 525, 250 N. W. 362, 363, defendant was held negligent for maintaining in its store a floor with a small hole in which plaintiff's heel caught, causing her to trip and injure herself. The evidence showed that the hole "did not appear to be a fresh one."

A person is bound to take notice that not only wood, but other substances, also are subject to decay, deterioration, and breakage and are liable to become dangerous by long and continual use. In this age, when so much metal, rubber, plastics, and other materials are used, it is just as necessary to impose such a duty upon the users of such materials as it was to impose that duty upon users of wood in the days when wood was the material predominantly used. The rule that the possessor of premises must take notice of the operation of natural causes has been applied in cases involving metal and other materials. Peil v. Reinhart, 127 N. Y. 381, 27 N. E. 1077, 12 L. R. A. 843 (carpet), (see Soper v. Erickson, 172 Minn. 377, 215 N. W. 865, *supra*) ; Maton Bros. v. Central Ill. Pub. Serv. Co. 269 Ill. App. 99 (deterioration of black iron pipe used as a gas main) ; O'Gorman v. Kansas City, 233 Mo. App. 124, 93 S. W. (2d) 1132 (deterioration of iron manhole and cover).

Lavoris Chemical Co. 117 Minn. 152, 134 N. W. 313; Farley v. Byers, 106 Minn. 260, 118 N. W. 1023, 130 A. S. R. 613; Widing v. Penn Mut. L. Ins. Co. 95 Minn. 279, 104 N. W. 239, 111 A. S. R. 471.

The inference is permissible that wear and tear due to continual use caused the edge along the rubberoid to turn up. The fact that defendant three years prior to the accident nailed down approximately 18 inches of the edge of the edging along the rubberoid toward the handrail side is explainable only upon the ground that it had turned up. Otherwise, why was it necessary to nail it down? The fact that about three years prior to the accident the brass strip had become so badly worn because of continual use that it was necessary to nail down a part of it to keep it from turning up on the floor covering side was sufficient to charge defendant with actual knowledge that the continued use of the stairs would cause the strip to turn up and do the very thing which plaintiffs claim caused Mrs. Anderson to fall. A possessor of property may acquire knowledge of defects while making repairs. Widing v. Penn Mut. L. Ins. Co. 95 Minn. 279, 104 N. W. 239, 111 A. S. R. 471, *supra*. In other words, a condition dangerous to persons using the stairs was in the making by the continual use thereof. Reasonable care required some reasonable inspection and, if need be, a removal of the worn metal strip to guard against danger. Hastings v. F. W. Woolworth Co. Inc. *supra*. Although the ravages of wear and tear were known to defendant when he nailed down the handrail side of the edging, there is no evidence that he ever inspected the strip again or took any measures to keep the same in repair during the following three years which elapsed prior to the accident. In cases involving metal stripping used on stairways, the possessor of the premises is bound to anticipate that wear and tear incident to use may render the stairs unsafe for use and to maintain some reasonable inspection to discover such condition before it results in injury to those using them. Hellyer v. Sears, Roebuck & Co. 62 App. D. C. 318, 67 F. (2d) 584; Kaplan v. Grand Dept. Stores, Inc. 118 Conn. 714, 174 A. 76; Swanson v. S. S. Kresge Co. 302 Ill. App. 455, 24 N. E. (2d) 62; Dickey v. Hochschild, Kohn & Co. 157 Md. 448, 146 A. 282; Hillis v. Sears, Roebuck & Co. 284 Mass. 320, 187 N. E. 558.

The authorities are in conflict. The case of Schnatterer v. Bamberger, 81 N. J. L. 558, 79 A. 324, 34 L.R.A.(N.S.) 1077, Ann Cas. 1912D, 139, is the leading case holding that there is no liability in a case like that at bar. That case is opposed to sound reason, because it requires notice of the particular defect without regard to the possessor's negligence in failing to exercise reasonable care to guard against it by inspection. In effect, that decision relieves the occupier of the duty to exercise reasonable care to maintain his premises in a safe condition for use by the public whom he has invited to use the same. Of course, where a structure becomes in disrepair suddenly and without fault of the possessor, he is not guilty of negligence until he has had an opportunity by the exercise of reasonable care to make the premises safe. But the condition here was not created suddenly. (See Stark v. Great A. & P. Tea Co. 102 N. J. L. 694, 133 A. 172, distinguishing the Schnatterer case upon this ground.) It was the result of wear and tear incident to continual use over a period of many years. For these reasons, the Schnatterer case was disapproved in the Dickey and Swanson cases, *supra*. In the Dickey case the court, *per* Offutt, J., said (157 Md. 451-2-3, 146 A. 283):

"So that, in determining whether the facts to which we have referred are sufficient to support an inference of negligence, consideration must be given, not only to the particular defect in the step which occasioned the accident, but also to other facts, such as the purpose for which the stairway was designed, that it was likely to be used by large numbers of persons of varying degrees of physical strength and activity, and of all ages, and that the attention of such persons might very probably at times be diverted by articles about them displayed for the very purpose of attracting their attention. Under such circumstances, ordinary care required the proprietor, not only to see that the stairway was so constructed as to be reasonably safe for use by persons who were themselves exercising ordinary care, but that it was maintained in that condition. The trial court reached the conclusion that the facts of this case were not legally sufficient to permit any

rational inference that the appellee had failed to discharge either of those duties, and in arriving at that conclusion much.reliance was placed upon the case of Schnatterer v. Bamberger, 81 N. J. L. 558 [79 A. 324, 34 L.R.A.(N.S.) 1077, Ann. Cas. 1912D, 139]. In that case the plaintiff, while descending a stairway in defendant's store, caught her shoe in a loosened brass edging or 'nosing' on one of the steps, in consequence of which she was thrown and injured. The court there held those facts furnished no evidence of actionable negligence, because they did not show (a) that the defendants had been actually notified of the defect, or (b) that it had existed for a space of time sufficient to charge them with constructive notice of it. But we are unwilling to accept the reasoning of the court in that case, or the conclusion reached by the trial court in this. *In that case the defendants must naturally have anticipated that the stairway would be used by a large number .of people, and that as a result of such use the steps and any covering on them would become in time worn and defective, and, as their duty to their patrons to see that the stairs were safe for use did not end when they constructed them, they were also bound to inspect the steps at reasonable intervals to ascertain their condition, and not to wait until some person whom they had invited to the store broke his neck as a result of a defect which a seasonable inspection would have revealed.* And the defective condition which caused the accident was in itself some evidence of a failure to fairly discharge that duty.

*   *   *   *   *

"The appellee should have anticipated that, as a result of the wear and tear to which they would be subjected, the material on the surface of the steps would at some time become worn and defective, and ordinary care required it to maintain some system of inspection which would discover that condition in time to remedy it before it resulted in injury to its customers. *It is undoubtedly true that it was in no sense an insurer of the safety of its customers, but to exonerate it from any responsibility for the condition of the step which caused the accident unless it actually knew*

*of the defect, or unless the plaintiff showed that it had existed for so long a period that defendant was charged with constructive notice of it, would be in effect to shift the duty of inspection from the storekeeper to the customer.* The rule, prescribing notice, actual or constructive, as an essential ingredient of negligence in permitting the existence of such a defect as that which resulted in the injury in this case, does not mean that, before he can be charged with negligence, it is necessary to notify an alleged tort-feasor of his own breach of duty, but that, after he has used ordinary care to prevent or discover any such condition and it nevertheless occurs, then its existence is no evidence of his negligence, unless he actually knew or had a reasonable opportunity to know of it.

*       *       *       *       *

"If there had been any evidence that the appellee had exercised ordinary care to see that the steps were properly constructed, and that it had exercised ordinary care to see that they were kept in a safe condition, then, before it could have been charged with negligence in failing to prevent or remedy the defect, it would have been necessary for the plaintiff to have shown that it knew or had had a reasonable opportunity to have known of it. But in the absence of any such evidence, the condition of the step immediately after the accident was sufficient to warrant the inference (a) that its construction was defective in material or design, (b) that the loosened strap had never been properly fastened down, or (c) that appellee had failed to make a reasonably careful inspection of the stairway. Under such circumstances, and in the absence of any evidence tending to show what if any care appellee exercised to keep its premises in a safe condition for use by those who at its invitation entered its store to examine or purchase its wares, whether it was or was not negligent in failing to prevent or remedy the defect which caused the accident in this case was a question for the jury, and there was error in granting appellee's prayer." (Italics supplied.)

Most of this language was quoted in the Swanson case.

The views expressed in the Dickey [157 Md. 448, 146 A. 282] and Swanson [302 Ill. App. 455, 24 N. E. (2d) 62] cases are in accord with the principles announced by this court in the Hastings [189 Minn. 523, 250 N. W. 362] and Williams [122 Minn. 49, 141 N. W. 849] cases. While the defendant may not have had knowledge before the accident that the edge of the strip was turned up, he had notice at that time that the dangerous condition was in process of creation because of wear and tear by continual use. Under the circumstances, he was bound to anticipate what happened. It was a fact question whether he exercised due care to prevent the metal strip from becoming dangerous to users of the stairs.

■ Whether plaintiff Inga Anderson was guilty of contributory negligence was a fact question. She was being helped down the stairs by her daughter, who, so far as we are informed, was a person in full possession of her faculties. She was not required as a matter of law to take any greater or different precautions for her safety. In Johnson v. St. Paul City Ry. Co. 67 Minn. 260, 262, 69 N. W. 900, 901, 36 L. R. A. 586, we said of persons whose faculties are impaired: "Like children, they are accustomed to intrust their safety to those who are younger and stronger mentally and physically than themselves; and within reasonable limits they may do so without being guilty of negligence." See Peterson v. Minneapolis St. Ry. Co. 90 Minn. 52, 95 N. W. 751. The evidence presented fact questions and sustains the verdict. There should be an affirmance.

Affirmed.

LORING, JUSTICE (dissenting).

There appears to be no controversy as to the law in regard to the liability of a landlord to the guests of his tenants in relation to common hallways and stairways. He is liable for negligence and is not an insurer of the safety of his premises. If he knows of a defect from which injury to someone may reasonably be anticipated and some injury proximately occurs, he is liable. If the

defect exists for such a length of time that a reasonably prudent landlord would have discovered and remedied it before the injury occurred, then he is charged with constructive notice of the defect. If the defect is of the type that results from a natural tendency to decay or from normal use, then that tendency must be taken into consideration in determining whether the landlord has been reasonably diligent in discovering and remedying the defect.

The majority endeavor to apply to the case at bar the theory of deterioration from decay or normal use. As I view the record, the facts do not justify the submission of the case to the jury on that or any other theory. There is no evidence of actual knowledge of the defect, nor is there evidence that it had existed for any length of time whatever. The problem presented is whether the defect complained of was of such a character as to bring into consideration the application of the rule with reference to deterioration from decay and normal use.

The brass edging was of a type in common use and apparently properly put down, because the plaintiffs' own witness who inspected it after the accident testified that the screws and nails which held it down were firm. There was no deterioration in the devices used to fasten it down. The majority assert that normal wear and use had a tendency to cause the edging to bend up at the edge, and they say that inference is justified by the fact that some three years before the accident defendant had nailed down the other end, but he was not asked why he did so. A bent-up edge is obviously the result of some heavy object, such as a piece of furniture, striking the edge of the edging. The photographs show plainly that the nose of the edging on the side next to the railing where defendant had put in the nails had been jammed in. It seems a natural inference that this violence to the front of the edging may have caused the defect which gave occasion to nail down that end. However that may be, there is no evidence of such an injury to the end where Mrs. Anderson fell. Likewise, there is no evidence in the record that bending up is caused by normal use or wear so long as the screws and nails are tight. Except for

the three corrugations running lengthways near the nose, the edging is smooth on its upper surface and apparently was so when it was installed. There is not a syllable in the record that even remotely hints that normal wear has a tendency to bend up the edge of the edging. From this the conclusion seems to be irresistible that ordinary wear or decay had no place in the chain of causation leading to Mrs. Anderson's injury. What meager evidence there is in the case is consistent with the theory that the bending up was caused by violent contact with some heavy object. There is none whatever that it was due to loose screws or to decay as in the cases cited by the majority. If that be so, then there was nothing to charge defendant with notice of the defect.

In the Dickey case, 157 Md. 448, 146 A. 282, quoted from at great length by the majority, the screws fastening the edging to the step had become loose, one of them having come out altogether. In the eyes of the appellate court the evidence justified a finding that the edging had either never been properly fastened down or that its construction was defective and that defendant had failed to make a careful inspection. Hence the case is not in point. No such evidence appears here, and the stairway was inspected three times a week by defendant's employe who swept the hall and stairway and scrubbed it on Sundays. He testified that he saw no defect. The Swanson case, 302 Ill. App. 455, 24 N. E. (2d) 62, also involved a loose edging. The distinction is too obvious to require further comment.

The only case involving a bent-up edging which has been called to our attention or which we have discovered is Doran v. United States B. & L. Assn. 94 Mont. 73, 77, 20 P. (2d) 835, where the court held that there was insufficient evidence to establish the fact that the defect had existed long enough to charge defendant with notice. There the plaintiff had a stronger case than have these plaintiffs.

The Schnatterer case, 81 N. J. L. 558, 79 A. 324, 34 L.R.A.(N.S.) 1077, involved a loose edging and may be criticized for that reason, though the court took the position that the inference was

justified that the looseness was caused by the accident complained of.

In my view of the case, the order denying the motions for a new trial should be reversed.

Mr. Justice Stone took no part in the consideration or decision of this case.

[1]Reported in 5 N. W. (2d) 351.