Esther C. Jochens, and Edward C. Jochens, Appellees,
v. City of Chicago, Appellant.

Gen. No. 46,455.

First District, First Division.
May 13, 1955.
Released for publication June 20, 1955.

John J. Mortimer, Corporation Counsel for City of Chicago, for appellant; L. Louis Karton, and John L. Steffens, both of Chicago, of counsel.

Shavin & Hamilton, and Samuel E. Bublick, all of Chicago, for appellees; William C. Wines, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

The plaintiff, Esther C. Jochens, sued to recover damages for personal injuries occasioned by the collision of an automobile, in which she was a passenger, with a safety island which the city is alleged to have negligently allowed to remain unlighted. The jury returned a verdict in her favor for $12,500, upon which judgment was entered. Defendant's motions for a directed verdict, for judgment notwithstanding the verdict, and for a new trial were all overruled, and the city appeals.

It appears from the evidence that on December 25, 1949, about 1:00 a. m., the safety island on Western and Schubert avenues was struck, and the permanent light fixture was knocked down and rendered inoperative. Police notified the district police office, and the permanent light was replaced with a temporary beacon which was operating when the repairman left the scene. On December 26, 1949, about 5:30 p. m., the Jochens automobile, in which plaintiff was a passenger and being driven by her husband Edward C. Jochens, was proceeding north on Western avenue following about a car length behind an automobile immediately ahead. As the cars approached Schubert avenue, the car ahead suddenly veered to the right, while the Jochens automobile proceeded straight ahead and struck the abutment of the unlighted safety island. Mrs. Jochens was thrown against the windshield and dashboard, sustaining severe injuries. She instituted this suit against the city to recover damages.

Daniel Jelinski, a police officer assigned to the accident investigation division, testified that on the southeast corner of Western and Schubert avenues there is a safety island running north and south, about four feet wide and between fifty and sixty feet in length; at the south end there is a concrete abutment about three feet high and between three and one-half and four feet wide; to the north of the abutment there was a steel light pole about six inches in diameter, and

146

between fifteen to twenty feet in height; on the top of the pole there was a canopy type of cover, with two amber lights shining out and lights directed down on the abutment. Officer Jelinski and his partner arrived in the vicinity of Western and Schubert avenues on December 25, 1949, at 1:30 a. m. It was cloudy, and the street was wet. He found an automobile up on the abutment. The light pole was lying partly on the safety island and partly on the street. He remained at the scene for about twenty minutes until the automobile was removed and the lamp pole was "put by the curbing." The CTA removed the pole and put it on the east sidewalk along the island. The lights from the abutment were not lit when the automobile was removed by a CTA truck. The officer made out a report, put up a flare in front of the abutment and notified the district police office that there were no lights.

The city's principal defense is that it had erected a temporary beacon on the safety island less than twenty-four hours before the accident; that it was functioning at the time it was installed, and that if it went out of repair before the accident, defendant had no notice thereof so as to charge it with negligence. The city admits that on December 25, 1949 the lamp post and flasher on the safety island were totally demolished, and that it had notice of this fact. The evidence shows that the temporary beacon was not functioning at the time of the second accident. The controversy arises over the nature of repairs made by the city after the first accident, and whether the city had notice that the temporary beacon installed went out of repair before this accident occurred.

Walter Sanders, employed in the bureau of electricity as a street light repairman, testified that on December 25, 1949 he was accompanied to the scene of the accident by Edward Morton, the driver of a city service truck which carried all the equipment neces-

147

sary to repair lights on loading zones, including wire, temporary beacons and lanterns. They found that the flasher at Western and Schubert had been hit and knocked down by an automobile, and was "smashed beyond repairs." Sanders installed a temporary beacon on the same abutment which protruded three and one-half to four feet in the air; this beacon had two lamps inside that operated off the same signal system as had the original beacon. The timing apparatus on the original beacon was an astronomical clock fed by the Edison Service and was set to go on one-half hour before sunset and off one-half hour after sunrise. In making repairs this timing apparatus was set to the temporary flasher beacon which they erected. "It was working. There were two bulbs in one twelve-inch container with an amber lens facing traffic on this temporary signal" which "was set right in the abutment where the original beacon had been secured."

Morton, the driver, testified that he and Sanders stopped at Western and Schubert avenues about 7:00 p. m. on December 25, 1949; that he usually stayed in the truck to make out the report while the repairman worked on the lights, but that on this occasion he got out of the truck to note the condition of the pole and the lights; that Sanders attached a temporary beacon, extending about five feet above street level, to the abutment of the safety island. Its light contained two bulbs, one of which blinked continuously, and he stated that after the repairman installed the temporary beacon, it was in working order. He testified further that when he and Sanders arrived at the scene, the light pole had been pulled up on the driveway, and he did not remember helping Sanders in moving the pole from the safety island to the side of the street. There were two wrecked cars on the side of the street that evening. When the repairman arrived at the scene of the accident there was a red glass kerosene lantern, about sixteen inches high, in front of the abutment. He did not

know who had placed it there, but Jelinski testified that he had done so.

 Considerable space is devoted in the respective briefs to the contention of the city that the court erred in refusing to admit in evidence Exhibit 1A and Exhibit 1B, being reports of the city's repair crew, Walter Sanders and Edward Morton. Since both these men testified that a temporary beacon was erected on the safety island less than twenty-four hours before the accident in question, we think the records were merely cumulative. Both stated that when they left the scene, after effecting the repair, the temporary beacon was functioning; there is no dispute as to this evidence.

 The city admits notice of the demolition of the flasher on December 25, 1949. It was therefore incumbent upon it to prove that it had taken adequate measures to remedy the dangerous condition existing at that date. The evidence of Sanders and Morton constituted proof of that fact. Plaintiff takes the position, however, that the testimony of the repair crew proved only that they "set" but did "not affix or in any ordinary sense of the word install" a temporary beacon "in the 'abutment where the original beacon had been secured.'" Upon this state of the record plaintiff argues that "the jury could find either that the temporary beacon was not set up at all, or, if it was set up, that it was not connected." This, it seems to us, is an attempt to give a meaning to the testimony of the city's witnesses that they did not intend. Sanders testified: "This timing apparatus was set to the temporary flasher beacon which we erected. It was working. . . . The temporary signal was set right in the abutment where the original beacon had been secured." Morton's testimony is corroborative: "I noticed after the repairman installed the temporary beacon that it was in working order." Possibly plaintiff feels that the defendant's defense is in effect a good offense, and

149

that in order to regain the offensive a semantic, rather than a legal, approach is indicated. The shadings of meaning attributed by plaintiff to the word "set" are not helpful here because they exclude the use of the word in its context; she is indulging in an autotelic exercise and is contributing nothing of value on the legal level.

 It is a well-established principle of law that a municipality is not liable for injuries arising from defects in the streets in the absence of actual or constructive notice of the existence of a dangerous condition. Boender v. City of Harvey, 251 Ill. 228; Ebert v. City of Chicago, 324 Ill. App. 315 (Abst.). The plaintiff's case failed in this essential; the evidence shows only that the temporary light fixture was installed about 7:00 p. m. of Christmas day and that some time before 5:30 p. m. of the following day it had ceased to function, for at that time, when plaintiff hit the safety island, it was unlighted.

 Plaintiff complains because a temporary beacon was installed in the place of the damaged permanent beacon, and argues in effect that its temporary character alone renders the city negligent. As a matter of practical policy, however, it seems reasonable to expect that in maintaining its warning signals over the entire city, municipal employees would have to make some repairs of a temporary nature; in all likelihood the incidence of such repairs would be greater on holidays. The pertinent consideration, however, is not whether the repair was of a temporary nature, but whether it could reasonably be expected to function as an effective warning signal; there is no evidence to negative such an expectation. That the temporary fixture was possibly rendered inoperative in an accident, as plaintiff suggests, does not in itself prove that it was defectively set up; the permanent warning signal had likewise been razed in an accident.

Under the circumstances the trial court should have directed a verdict in favor of the city or entered judgment notwithstanding the verdict; failure to do so constituted error. Therefore the judgment of the superior court is reversed and the cause remanded with directions that judgment be entered in favor of the city and against plaintiffs for costs.

Judgment reversed and cause remanded with directions.

BURKE, P. J. and NIEMEYER, J., concur.