Betty Anne Stankowitz, a Minor, by Jean Stankowitz, Her Mother and Next Friend, Appellee, v. Goldblatt Bros., Inc., a Corporation, Appellant.

Gen. No. 48,978.

First District, First Division.

September 16, 1963.

Albert H. Dolin, of Chicago (Bernard Rosencranz, of counsel), for appellant.

Sennett, Levin, Craine and Stride, of Chicago (Herbert F. Stride, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action. Plaintiff was burned by exposed electrical wires connected with a water cooler which defendant maintained for its customers. Defendant appeals from a $5600 verdict and judgment, contending the trial court erred in denying its post-trial motions for judgment notwithstanding the verdict or for a new trial.

On July 12, 1957, plaintiff, then a two and one-half-year-old child, accompanied her mother to defendant's department store in Chicago. While looking at merchandise, the mother heard the child scream and found her next to an electric water cooler. Plaintiff's right calf was in contact with exposed wires, which connected the water fountain with an electrical outlet on the adjacent wall. She was taken by a store employee to a physician, who treated a burn on her right calf.

At the time of the injury, plaintiff weighed about 34 pounds and was about 3 feet tall. The water cooler, a self-contained unit, was 37 to 40 inches high, with a fountain jet on top, and was operated by a foot pedal located about an inch above the floor. The machine was about four inches from the south wall of the store. In this space an electrical wire led from the machine to an electrical outlet in the wall, located approximately one foot above the floor level. When found by her mother, plaintiff was facing east toward the machine, in a 2-foot wide space between the machine and a display platform to the west. She was pressed against the south wall of the store.

174

Plaintiff was too young to remember and testify as to what happened prior to her injury, and there were no occurrence witnesses. Plaintiff's mother testified that after she picked up plaintiff, she noticed a "hole" in plaintiff's right outside calf which looked like a burn. While awaiting help from defendant's employees, the mother looked at the electrical connection of the cooler. She observed that "the plug was half in the socket and half out. It seemed there was some broken wires sticking through, ravelled and exposed." The exposed wires were "right close to the plug," and "had no covering on them."

A store engineer of defendant, Kermit Williams, testified in behalf of plaintiff. He testified he was called to the scene immediately after plaintiff's injury, to make repairs. Defendant made no objection to this testimony. Williams stated: "When I got to the scene of the accident I observed the rubber covering on the plug of the cooler sticking in the receptacle had been pulled loose from the prongs and these prongs were exposed. . . . There was a rubber covering that covered the wires that go into the prongs and the covering had been pulled loose. . . . The prongs were in the socket. The rubber covering was separated. . . . The prongs were not exposed. The wires were exposed. . . . The nature of the repairs was to install a new plug on the cord." He further testified there was no apparatus, step or plank or stool directly in front and to the side of the machine, and that he had "seen children drinking from the machine many times."

Defendant's only witness was an employee, a saleswoman working on the floor where the injury occurred. She heard plaintiff scream and rushed over, arriving prior to plaintiff's mother. Plaintiff was about two feet in front of the machine, jumping up and down and crying. She noticed a "welt" on plaintiff's leg. After plaintiff's mother arrived and picked up the

175

child, the employee looked at the electrical connection of the water cooler; she saw "bare wires were exposed where the plug was mashed down." She further testified that a few hours before, and while straightening merchandise on a platform two feet west of the water cooler, she looked at the electrical cord, plug, and socket, and saw no exposed wire—"the regular plug [was] on the cord as it should be." The water cooler was functioning properly.

Defendant contends that on this record it was entitled to a directed verdict. Defendant's motion for judgment notwithstanding the verdict presented the single question whether there was in the record any evidence which, standing alone and taken with all its intendments most favorable to plaintiff, tended to prove the material elements of her case. Evidence favorable to plaintiff's case was all that could be considered by the trial court in this inquiry. If there was a total failure to prove one or more of the essential elements of plaintiff's case, the motion for a directed verdict should have been allowed. Tucker v. New York, C. & St. L. R. Co., 12 Ill2d 532, 534, 147 NE2d 376 (1958); Moss v. Wagner, 27 Ill2d 551, 554, 190 NE 2d 305 (1963).

As related, the only testimony as to the condition of the plug was descriptive of its state immediately after the occurrence—in substance, that the hard rubber sheath covering the plug was pulled back and bare wires were exposed.

Defendant contends there is no evidence in the record justifying submission to the jury of the question of defendant's negligence because: (1) the defective condition of the plug was not shown to have existed prior to the instant occurrence; and (2) that if any defective condition did exist prior to the occurrence, there is no evidence from which the jury could conclude that it existed for a sufficient period of time so

176

that defendant, in the exercise of ordinary care, should have had notice of it.

In the absence of direct testimony showing a defective condition to have existed prior to the occurrence, defendant argues that the jury's verdict could only have rested on speculation. To argue thus is to deny the jury the right of drawing reasonable inferences from the evidence before it. As stated in Lavender v. Kurn, 327 US 645 (1946):

> "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only where there is a complete absence of probative facts to support the conclusion reached does a reversible error appear."

This language was cited with approval by our Supreme Court in Lindroth v. Walgreen Co., 407 Ill 121, 133, 94 NE2d 847 (1950), where the court also stated that "the focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury."

We believe the nature of the testimony permits a reasonable inference that the defective condition of the plug pre-existed plaintiff's contact with it. To hold otherwise would place an unreasonable burden on plaintiff. This was a fixed appliance, attached to defendant's premises. We believe also, contrary to the trial court's ruling and as is properly argued by defendant, that it is a reasonable inference that plaintiff herself may have caused the wires and prongs to have become exposed, by stepping upon the plug in an attempt to raise herself high enough to drink from the fountain.

177

Under either of the foregoing inferences, the pronouncements in Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836 (1955) are decisive here. Every person owes to all others a duty to exercise care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence of his act, and the law is presumed to furnish a remedy for the redress of every wrong. The duty to exercise ordinary care to avoid injury to another can extend to remote and unknown persons. The creator of conditions dangerous and hazardous to children, because of their immature appreciation of such dangers and hazards, must be held to a standard of conduct for the protection of such children in accordance with the attendant circumstances and conditions. Halloran v. Belt Ry. Co. of Chicago, 25 Ill App2d 114, 119, 166 NE2d 98 (1960).

Defendant had notice that children frequently drank from the fountain, which was not equipped with a step or stool. Fair-minded men might believe that defendant, in the exercise of ordinary care, should have reasonably anticipated that small children, in attempting to drink from the fountain, would climb upon the machine and its electrical connections, and that injuries such as that of plaintiff might "naturally flow as a reasonably probable and foreseeable consequence" of the failure of children to realize the danger involved.

■ A jury might reasonably conclude that defendant failed to measure up to a proper "standard of conduct for the protection of . . . children in accordance with the attendant circumstances and conditions." We conclude the question of defendant's negligence was properly submitted to the jury, and that defendant's motions for a directed verdict and judgment notwithstanding the verdict were properly denied.

■■ Defendant next argues that plaintiff lost her status as an invitee by venturing into a portion of the

178

premises to which an invitation had not been extended, either expressly or by implication, and therefore became a licensee. The argument assumes that plaintiff was an invitee up to the point that she entered the space between the water cooler and the wall, and that from that point onward she was a licensee, to whom defendant owed a duty merely to refrain from wilful and wanton negligence. We find no merit in this contention. An invitation extends to any portion of the premises which the owner may reasonably anticipate the invitee to use in connection with the conduct of the business on the premises. (Briney v. Illinois Cent. R. Co., 401 Ill 181, 81 NE2d 866 (1948).) The invitee in this case was a two and one-half year old child. The record before us is a sufficient basis for the jury to conclude, as it did, that such a plaintiff's presence could reasonably be anticipated at the point of injury. Belcher v. John M. Smyth Co., 243 Ill App 65 (1926); cf. Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836 (1955).

■ The jury awarded damages of $5600 to plaintiff, which sum, defendant argues, is so excessive as to require reversal and remandment for a new trial. The rule is that a verdict for personal injuries will not be disturbed by a reviewing court unless so palpably excessive as to indicate the jury acted from some improper motive. (Lester v. Hennessey, 29 Ill App2d 11, 22, 172 NE2d 403 (1961).) The only specific item of damages proven was a doctor's bill of $245, which had not been paid. The testimony of the physician who treated plaintiff was that her wound was an ordinary burn, which he treated by cleaning the wound, applying ointment and a dressing. Subsequent treatment was identical. The burn healed without complications. At the last time he saw plaintiff, almost five years before the trial, the wound was healed, leaving a scar which the doctor described as keloid in nature.

A plastic surgeon, called by plaintiff, testified that the scar was permanent; he mentioned nothing about a keloid scar. Both physicians were agreed that plaintiff has sustained no loss of function of any kind. Other than the medical expenses in evidence and the initial pain and suffering, the only additional item of damages in the record is that attributable to the permanent scar on plaintiff's right outside calf. This is approximately 1½ inches in length. The evidence before the jury justified no inference that the scar would affect future employment, or that it was particularly disfiguring.

On this evidence, we hold that an award of $5600 is so excessive as to indicate that the jury was actuated by some improper motive, which, as properly contended by defendant, may have been caused by the improper argument of plaintiff's counsel. In our view, the award falls without the limits of fair and reasonable compensation for the injury proven.

We believe that a new trial is necessary, both in the light of our pronouncements and because of the award of excessive damages.

For the reasons indicated, the judgment appealed from is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

BURMAN, J, concurs.

ENGLISH, PJ, specially concurring:

I agree that there should be a new trial, but cannot concur in all that is said by the majority.

I do not believe that "the nature of the testimony (to the effect that the plug was seen to be broken after plaintiff's injury) permits a reasonable inference that the defective condition of the plug pre-existed plaintiff's contact with it." In this regard it should be

borne in mind that the only proof as to prior condition was that the plug was whole a few hours before the accident. Furthermore, proof of prior defective condition without proof that it was caused by defendant, or without proof of notice to defendant, actual or constructive, would be insufficient to establish negligence on the part of defendant, the sine qua non of the action. The conclusion of the majority on this point is contrary to the consistent holdings of a great volume of cases involving premises rendered dangerous by the existence of defective conditions or by the presence of foreign substances.

While the case of Donoho v. O'Connell's, Inc., 13 Ill 2d 113, 148 NE2d 434, involved a foreign substance, the opinion's statement of the general rule is, I believe, appropriate here. The court said at page 118:

> The parties do not question or quarrel with the rules of law appertaining herein: That a proprietor owes a business invitee the duty of exercising ordinary care in maintaining the premises in a reasonably safe condition (Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153); and that liability will be imposed where a business invitee is injured by slipping on a foreign substance on the premises if it was placed there by the negligence of the proprietor or his servants, or, if there is no showing how the substance got on the premises, if it appears that the proprietor or his servant knew of its presence, or that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered. (Davis v. South Side Elevated Railroad Co., 292 Ill 378.) Thus, where the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive (Pabst v. Hillmans, 293 Ill App 547); whereas,

181

if the substance is on the premises through acts of third persons, the time element to establish knowledge or notice to the proprietor is a material factor. Schmelzel v. Kroger Grocery and Baking Co., 342 Ill App 501.

See also Semmler v. Accettura, 31 Ill App2d 249, 253, 175 NE2d 297; Jones v. Kroger Grocery and Baking Co., 273 Ill App 183; Ritgers v. City of Gillespie, 350 Ill App 485, 492, 113 NE2d 215; Jochens v. City of Chicago, 6 Ill App2d 144, 150, 127 NE2d 142. The presumption of continuance of a condition runs forward, but does not reach backward. Cantwell Eagle Brewing Co. v. Horst, 61 Ill App 330, 331; City of Chicago v. Early, 104 Ill App 398, 400.

The facts in the case at bar do not lend themselves to the inference that the plug was more likely to have been broken by defendant than by others including plaintiff. We are, therefore, not faced with a case to which the decision in Donoho v. O'Connell's, Inc., 13 Ill2d 113, 148 NE2d 434, would be applicable. Nor are the facts here parallel to those in Swanson v. S. S. Kresge Co., 302 Ill App 455, 24 NE2d 62.

I do agree with the majority, however, that there was sufficient evidence to raise a jury question under the rule of Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836. Upon a new trial, therefore, it could be argued by plaintiff that the manner of installation of the drinking fountain; its location with reference to the wall and the electric plug; the lack of a step to permit use by small children; etc.; constituted negligence on defendant's part. And under that circumstance it would also be proper for defendant to argue the inference that the plug had been broken by plaintiff, as this would bear on the question of foreseeability in its relation to negligence, as set forth in the Kahn case.